Bailey v. State.

Jordan, C. J., concurs in result.

## Bailey v. The State.

[No. 19,951. Filed June 22, 1904.]

STATUTES.—*Construction.—Intent.*—Where a statute is ambiguous and of doubtful meaning, the court will examine the contemporaneous history to help in arriving at the intent and purpose of such statute, in order to carry out the purposes thereof and prevent the mischief the legislature intended to restrain. *p. 167.*

SAME.—Section 7510 Burns 1901, Acts 1893, p. 300, §1, provides two separate offenses, and where a prosecution is instituted under the first provision thereof, and the government's evidence shows a violation as charged and the defendant's evidence shows a violation of the second provision, a refusal of the court to give an instruction, tendered by defendant, that if the jury should find that defendant violated such second provision and not the first he should be acquitted of the charge against him for violating the first, is error. *p. 168.*

From Blackford Circuit Court; *E. C. Vaughn,* Judge.

Prosecution by the State of Indiana against Joshua Bailey for the violation of §7510 Burns 1901. From a judgment entered on a verdict convicting defendant and assessing his fine at $35, he appeals. *Reversed.*

*J. A. Hindman* and *M. M. Powell,* for appellant.

*C. W. Miller,* Attorney-General, *C. C. Hadley, L. G. Rothschild* and *W. C. Geake,* for the State.

HADLEY, J.—Section 7510 Burns 1901 (Acts 1893, p. 300, §1) reads as follows: "It shall be unlawful for any person, firm or corporation having possession or control of any natural gas or oil-well, whether as contractor, owner, lessee, agent or manager, to allow or permit the flow of gas or oil from any such well to escape into the open air, with-

out being confined within such well or proper pipes, or other safe receptacle for a longer period than two days next after gas or oil shall have been struck in such well. And thereafter all such gas or oil shall be safely and securely confined in such well, pipes or other safe and proper receptacle."

Appellant was convicted upon an indictment under §7510, *supra,* which charged him with having allowed the flow of gas from a well to escape into the open air without being confined for a longer period than two days next after gas had been struck in such well, and then and there unlawfully failing and neglecting safely and securely to confine all of such gas in such well, pipes, or other safe receptacle. As relating to the testimony, the court refused to give the jury an instruction requested by appellant, the propriety of which refusal calls for a construction of the statute, and which is the only question presented. The appeal was filed in this court September 12, 1902, and is governed by sections seven and eight of the act "concerning appeals" approved March 12, 1901 (Acts 1901, p. 565), which conferred jurisdiction upon this court in this class of appeals involving the construction of a statute. It is therefore not affected by the amendment of said section seven approved March 9, 1903 (Acts 1903, p. 280). See *Russell* v. *State* (1903), 161 Ind. 481.

Appellant's contention is that §7510, *supra,* creates two offenses: (1) That of failing to confine and allowing the gas to escape into the air for a continuous period longer than two days next after it is struck; and (2) that of opening a well or well pipes, or suffering the same to become open, and allowing gas to escape therefrom at any time, or for any period, after the two days allowed for closing. The Attorney-General contends that the first above stated is the only offense created by §7510, *supra,* and this seems to have been the theory upon which the court acted in refusing to

give the instruction in controversy. It is our duty to carry out the purpose and intent of the legislature. When cases of doubt arise, in arriving at such intent and purpose, courts will look to contemporaneous history for the evils sought to be remedied, and the conditions that probably led up to and induced the enactment. *State Board, etc.,* v. *Holliday* (1897), 150 Ind. 216, 42 L. R. A. 826. When the intent and purpose of the act is thus made clear and consistent, and the act is calculated to effect the obvious purpose, necessary words may be implied, and words limited or enlarged in meaning, and the ordinary meaning of words and phrases required to yield to the construction which upholds and makes effective the legislation. Black, Interp. of Laws, 36; Endlich, Interp. of Laws, §113; *Storm* v. *Stevens* (1885), 104 Ind. 46, 50; *Connecticut Mut. Life Ins. Co.* v. *Talbot* (1887), 113 Ind. 373, 378, 3 Am. St. 655.

It is a matter of public history that, in the early years following the discovery of natural gas, both producers and consumers were prodigal in its use and reckless in its waste. A valuable resource was being wantonly and uselessly dissipated, and the atmosphere of the community unnecessarily polluted. If explorers drilled a well that produced a small and unprofitable quantity, they left it open and went their way to another spot. Oil was also discovered in the same district, and gas often struck before the oil sands were reached. In such case the gas was permitted to escape while operations for oil proceeded. It was to stop this useless waste of gas, this unnecessary contamination of the air, that the legislature enacted the law of 1893. The plain purpose of the act was to enforce a husbanding of the valuable fluid, and, as far as possible, to prevent it from passing into the atmosphere. It was recognized that some time was required in which to complete a well after gas was struck —to shoot, clean out, and attach to it the proper appliances and pipes. The legislature deemed two days sufficient for

this purpose, and in the first clause of §7510, *supra,* clearly intended to limit the free flow of gas at the bringing in and completion of a well to that period. And can there be any possible reason for restraining the waste of gas at that particular time, and not afterwards?

We are not driven among doubts, in the construction of this statute. Section 7510, *supra,* plainly imposes upon persons having the possession or control of natural gas wells two distinct and separate duties: (1) Upon bringing in a well, to stop the escape of gas into the air by properly confining it within two days next after it is struck; and (2) thereafter as long as it flows safely and securely to confine the gas in such well, pipes, or other safe and proper receptacle. Section 7511 Burns 1901 (being section two of the original act) provides that upon the abandonment of producing wells, the same shall be securely plugged in the specific manner therein described, so as to stop effectually and permanently the escape of gas at that point. And §7512 Burns 1901 (being section three of the act of 1893, as amended, Acts 1899, p. 82) reads thus: "Any person violating any provision of this act shall be guilty of a misdemeanor, and upon conviction thereof shall be fined in any sum not less than $20, nor more than $200, * * * and each day during which such violation shall continue shall constitute a separate offense." The different things required to be done by those in possession or control are all designed to promote the same general purpose—the control and husbanding of gas. The penalty prescribed by §7512, *supra,* applies to any and all requirements of the act, and the breach of any single provision is therefore a separate offense.

There is but one count in the indictment, and in this the charge is that appellant allowed the gas from the well to escape into the open air without being confined for a longer period than two days next after it was struck, and did then and there (that is within the two days) unlawfully fail

securely to confine such gas in such well, pipes, and other safe receptacle. It is fundamental that in a criminal trial the evidence should be confined to the charge preferred against the defendant. In this case the State's principal witness testified that he was at the well on Thursday, October 24, and on each of the next five following days, except the 25th, and that upon each visit the well was open and the gas freely escaping into the air. To overcome this evidence the defendant offered the testimony of four witnesses, three of whom were all the time engaged in the construction of the well, to the effect that gas was struck late on Thursday evening, October 24, and the well shot about noon on Saturday, the 26th, and the gas immediately confined by placing a cap and other appliances on the casing; that the gas was thus securely confined, and left so confined from Saturday noon till the next Monday morning, when the well was reopened for the purpose of doing some further work upon it, during the progress of which the gas was allowed to escape for more than two days.

Under this state of the evidence the defendant requested the court to give to the jury the following instruction: "I instruct you that if you find from the evidence that the defendant was in charge of a certain gas-well, in which gas was found, and that, after gas was struck in such well, such gas was, within two days after the same was struck, confined in such well, pipes, or other safe receptacles, but that after the expiration of said two days the well was again opened for the purpose of repairing or completing said well, and that, while so opened, gas was allowed to escape from such well, after the same had been so confined in said well, then I instruct you that the defendant would not be guilty of the offense charged in the indictment, and it would be your duty to acquit him." If the State's evidence was true, the defendant was guilty as charged. If the defendant's evidence was true, he was not guilty of the offense charged, and should have been acquitted. The

charge requested was appropriate to the condition of the evidence, and should have been given.

Judgment reversed, and cause remanded, with instructions to grant appellant a new trial.