C & C OIL CO., INC., Petitioner,

v.

**INDIANA DEPARTMENT OF STATE
REVENUE, Respondent.**

No. 49T05–9006–TA–00027.

Tax Court of Indiana.

April 15, 1991.

Joseph R. Impicciche, N. Kent Smith, Hall Render Killian Heath & Lyman, Indianapolis, for petitioner.

Linley E. Pearson, Atty. Gen. by Lynn A. Francis, Douglas J. Deglopper, Deputy Attys. Gen., Indianapolis, for respondent.

FISHER, Judge.

C & C Oil Co., Inc. (C & C Oil) originally appealed the Indiana Department of State Revenue's (Department) assessment of special fuel tax, interest, and penalties for the years 1984, 1985, 1986, and 1987, and motor carrier fuel use tax, interest, and penalties for the years 1985, 1986, and 1987. The Department's Letter of Findings, issued April 16, 1990, denied C & C Oil's timely protest of the Department's proposed assessments for the years at issue. C & C Oil paid the assessed amount demanded by the Department and simultaneously filed a claim for refund. Prior to any action on the claim, C & C Oil filed its original tax appeal.

This matter is before the court on C & C Oil's "Motion for Partial Summary Judgment" on the issue concerning the special fuel tax assessment, including tax and interest in the sum of $17,902.86 for the years 1984, 1985, 1986, and 1987, on special fuel dispensed through a metered pump labeled "No. 2 Fuel Oil." The parties stipulated to dismiss all other issues included in C & C Oil's original tax appeal.

## FACTS

The facts emerge from the affidavits C & C Oil filed and are mirrored in the Department's depositions of three of the affiants. The Department has not filed counter affidavits or other opposing evidence; instead, it attempts to impeach C & C Oil's evidence and witnesses to show the existence of a genuine issue of a material fact.

C & C Oil was an Indiana licensed "special fuel dealer," as defined in IC 6–6–2.1–103(h), engaged in the business of buying and selling petroleum products, including special fuel, at the time of the assessments. C & C Oil owned and operated a service station in Plymouth, Indiana, which was primarily engaged in retail sales of gasoline and special fuel to consumers. The station had four (4) distinct islands, each with metered pumps for dispensing fuel. Three islands exclusively dispensed gasoline. The fourth island was used solely for the sale of special fuel. The special fuel island was close to and visible from the cashier's booth. The three metered pumps on the special fuel island were each individually labeled, color-coded, and electronically controlled from the cashier's booth. The special fuel pumps could only be activated from within the booth by an employee trained in the operation of the equipment. A green pump labeled "diesel fuel" was used by customers who placed special fuel into the fuel tank of motor vehicles. Special fuel tax was paid on purchases from the green pump. The remaining two pumps were chrome colored, one labeled "kerosene" and the other "No. 2 Fuel Oil." Diesel fuel and "No. 2 Fuel Oil" are identical and are drawn from the same underground reservoir. Sales from the diesel fuel pump, however, included special fuel tax, while sales from the chrome colored "No. 2 Fuel Oil" pump, the subject of the instant controversy, did not include special fuel tax.

## ISSUES

The issues are:

I. Is there a genuine issue of a material fact as to whether special fuel is dis-

pensed from the "No. 2 Fuel Oil" pump into the fuel tanks of motor vehicles? II. As a matter of law, is fuel sold from a color-coded employee controlled fuel pump to customers who do not place the fuel into the fuel tank of motor vehicles taxable under IC 6–6–2.1–201?

## STANDARD OF REVIEW

▬ Summary judgment is not a substitute for trial to resolve factual disputes, *ITT Commercial Fin. Corp. v. Union Bank & Trust Co.* (1988), Ind.App., 528 N.E.2d 1149, 1152, and is an inappropriate means to resolve conflicting inferences from undisputed facts. *Id.* at 1152 (citing *Board of Aviation Comm'rs v. Hestor* (1985), Ind.App., 473 N.E.2d 151, 153). The court shall grant a motion for summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Rules of Procedure, Trial Rule 56(C). Summary judgment may be granted in favor of either the moving or the nonmoving party. *Indianapolis Pub. Transp. Corp. v. Indiana Dep't of State Revenue* (1987), Ind.Tax, 512 N.E.2d 906, 907, *aff'd,* Ind., 550 N.E.2d 1277 (1990).

▬ The moving party bears the burden of proving first, that no genuine issue of material fact exists and second, that the moving party is entitled to judgment as a matter of law. *ITT Commercial,* 528 N.E.2d at 1151 (citing *Creighton v. Caylor–Nickel Hosp., Inc.* (1985), Ind.App., 484 N.E.2d 1303, 1305–06). C & C Oil asserts that no genuine issue of material fact exists and the Department's assessment of special fuel tax was erroneous as a matter of law.

## I.

▬ "The method of ascertaining whether a material factual issue exists is as follows: Facts alleged in the complaint are taken as true except to the extent that they are negated by other pleadings, depositions, answers to interrogatories, affidavits, or other evidence presented by the moving party." *Kahf v. Charleston S. Apartments* (1984), Ind.App., 461 N.E.2d

723, 729, *transfer denied,* (citing *Estate of Tanasijevich v. City of Hammond* (1978), 178 Ind.App. 669, 383 N.E.2d 1081). C & C Oil presented affidavits from five Plymouth station employees containing substantially the same facts. The affidavits explained the procedural safeguards C & C Oil devised to ensure that special fuel from the "No. 2 Fuel Oil" pump was never placed in the fuel supply tank of motor vehicles, therefore ensuring sales were made exclusively to consumers for off-road uses, i.e., farmers, home heating customers, construction equipment owners, *et cetera.* These safeguards included color coding of pumps containing different fuel, proximity and visibility of the pumps from the cashier's booth, and exclusive activation of the pumps by trained employees from within the booth.

Taxation of special fuel is authorized only if special fuel is delivered or placed in the fuel tank of a motor vehicle. *See* IC 6–6–2.1–201; IC 6–6–2.1–103. Whether special fuel from the "No. 2 Fuel Oil" pump goes into the fuel supply of a motor vehicle is a material fact because it may be dispositive of the litigation or a relevant secondary issue. *Willsey v. Peoples Fed. Sav. and Loan Ass'n* (1988), Ind.App., 529 N.E.2d 1199, 1206 n. 5 (citing *Jones v. City of Logansport* (1982), Ind.App., 436 N.E.2d 1138), *transfer denied.* The critical question is whether a genuine issue exists with respect to this material fact.

C & C Oil's pleadings and affidavits demonstrate an absence of a genuine issue of material fact since the affiants averred that they never observed special fuel from the "No. 2 Fuel Oil" pump dispensed into the fuel tank of a motor vehicle. The burden therefore shifts to the Department to show the existence of a genuine issue of material fact by specifically setting forth contrary facts either in affidavits, depositions, testimony, or as otherwise provided in T.R. 56(C). *ITT Commercial,* 528 N.E.2d at 1151.

The Department deposed three of the affiants in an attempt to impeach statements in the affidavits to show that reasonable minds might disagree as to whether or

not special fuel was dispensed into the fuel supply tanks of motor vehicles. The Department's depositions of C & C Oil's president, the Plymouth station manager, and the deli manager/cashier reveal that employees were not watching the fuel pump at all times. The cashier normally did not face the island on which the "No. 2 Fuel Oil" pump was situated. The station manager, Glen Berger, Jr., stated that he trained each cashier, however, to turn and look out the window to see what the special fuel would be dispensed into before activating the electronic part of the pump so the customer could get fuel. *Berger Deposition* at 11–14. Eleanor Crum, the deli manager and cashier who was employed by C & C Oil for approximately three and a half years, stated in her deposition, "I can remember a time when a man did *try* to put [fuel from the 'No. 2 Fuel Oil' tank] in his truck, and *I shut him off right away* and run [sic] out and told him he couldn't use that." *Crum Deposition* at 25 (emphasis added).

The Department asserts C & C Oil's procedures are inadequate to prevent special fuel from the "No. 2 Fuel Oil" pump from being placed into the fuel tanks of motor vehicles. The Department attempts to show the existence of a genuine issue as to whether special fuel from the "No. 2 Fuel Oil" pump is ever placed in fuel tanks of motor vehicles in two ways.

First, the Department tries to create a genuine issue using the following invention:

Well, as we brought out in the deposition, Your Honor, if the people pulled up there in a vehicle with cans to fill, and they bring the cans out onto the ground in order to fill up those cans, depending on where the vehicle is placed, *it is possible that the cashier cannot see over or around that vehicle in order to see the cans that are being filled.* Now, they said most of the time they would pull up far enough that they could see. However, he did indicate that certainly if they wanted to[,] *there are times where customers could have filled the can and also filled the tank of whatever vehicle that was placed there*, because the cash-

ier would have been unable to see the procedure itself.

*Record* at 42 (emphasis added).

Without more than these suppositional musings, the factual question is not genuine; it is merely hypothetical. *See Downing v. Eubanks* (1990), Ind.App., 557 N.E.2d 1027, 1030. The Department has not provided one fact showing a customer dispensed special fuel into the tank of a motor vehicle which would raise a genuine issue.

■ The court must look at the evidence and all *reasonable inferences* which can be drawn therefrom in the light most favorable to the nonmoving party, *Cromer v. City of Indianapolis* (1989), Ind.App., 540 N.E.2d 663, 666, (citing *McFarlin v. State* (1988), Ind.App., 524 N.E.2d 807). The inferences that the Department's hypothetical reflect, although most favorable to the Department, are unreasonable in light of the cashier's training and the mechanical and procedural safeguards in effect. The hypothetical is not a reasonable inference from the facts; it is merely conjecture to infer that fuel from the "No. 2 Fuel Oil" pump is dispensed into the gas tanks of motor vehicles as a result of an intermittent lack of watchfulness. Consequently, the hypothetical speculation flowing from the given facts does not raise a genuine issue.

■ Free flowing speculation is just that and cannot be construed to be a fact that could shed doubt on the validity of other facts. Opinions expressing mere possibilities with regard to hypothetical situations are insufficient to establish a genuine issue of material fact. *Watson v. Medical Emergency Servs., Corp.* (1989), Ind.App., 532 N.E.2d 1191, 1195–96, *transfer denied.* In *Watson*, the appellant argued that speculative testimony by an expert in response to hypothetical situations supported appellant's assertion that conflicting inferences arose from the undisputed facts to prevent the granting of a motion for summary judgment against the appellant. The court was unpersuaded, holding that "testimony as to mere possibilities will not alone suf-

fice" to establish a genuine issue of fact. *Id.* at 1195.

Given the effectiveness of C & C Oil's mechanical and procedural safeguards in preventing "No. 2 Fuel Oil" from entering the gas tanks of motor vehicles, the Department's assertion that taxable events *could* occur is an unreasonable inference. The issue of material fact asserted by the Department therefore is not genuine because it is merely conjecture.

■ Second, the Department tries to create a genuine issue about whether special fuel dispensed into a container which indicates an off-road use actually would be used for on-road purposes. Once again the Department resorts to a hypothetical:

> It is just as easy for him to take that fuel that he takes away in that tank [in the back of a pickup truck], take it to his farm, wherever that may be, and put it into the vehicles that are going to be used for on the road, as it is for him to take it and put it into his tractor or his corn planter that he is going to use for the agricultural purpose that would be exempt, and there's no way for us to know that.

*Record* at 35-6.

The court must determine the probative value of each piece of evidence presented in connection with a motion for summary judgment without setting weight or credibility, *Burke v. Capello* (1988), Ind., 520 N.E.2d 439, 440, and must resolve all doubts and reasonable inferences in the Department's favor. *Cromer,* 540 N.E.2d at 666 (citing *McFarlin v. State* (1988), Ind.App., 524 N.E.2d 807). Nevertheless, without something of greater probative value, a bald assertion, speculating about the ultimate use of special fuel after it is sold and beyond the control of C & C Oil, is an unreasonable inference creating a disingenuous issue.

Furthermore, this second hypothetical does not concern a material fact since the customer's possible on-road use of special fuel after purchase from C & C Oil in a container that is not a motor vehicle gas tank is not dispositive of whether C & C Oil is taxable on special fuel sales.

"A motion for summary judgment cannot be defeated merely by an opposing party's incantation of lack of credibility over a movant's supporting affidavit." *Walter v. Fiorenzo* (7th Cir.1988), 840 F.2d 427, 434. The court therefore finds that no genuine issue of material fact exists.

## II.

■ After determining that no factual issue exists, summary judgment is appropriate if either C & C Oil or the Department is entitled to judgment as a matter of law. *State ex rel. Bd. of Dental Examiners v. Judd* (1990), Ind.App., 554 N.E.2d 829, 830. The Special Fuel Tax Law, IC 6-6-2.1-101 *et seq.,* imposes a license tax "on the *use* of special fuel." IC 6-6-2.1-201 (emphasis added). IC 6-6-2.1-103(i) defines "use" as "the delivery or placing of special fuel into the fuel supply tank of a motor vehicle in Indiana."

■ When the language of a statute is plain and unambiguous, the court has no power to construe the statute for the purpose of limiting or extending its operation. *DeHart v. State* (1984), Ind.App., 471 N.E.2d 312, 314 (citing *Meade Elec. Co. v. Hagberg* (1959), 129 Ind.App. 631, 159 N.E.2d 408, 413). The plain language of IC 6-6-2.1-103(i) empowers the taxation of special fuel *only* when it is delivered or placed into the fuel tank of a motor vehicle. If special fuel is not delivered or placed into motor vehicle gas tanks, then it is beyond the taxing authority of the Department. Any broader construction would impermissibly enlarge upon the powers granted the Department by law, *Indiana Department of State Revenue v. Sohio Petroleum Co.* (1976), 170 Ind.App. 123, 126, 352 N.E.2d 95, 98 (citing *Gross Income Tax Division v. Colpaert Realty Corp.* (1952), 231 Ind. 463, 109 N.E.2d 415), *overruled on other grounds, Indiana Department of State Revenue v. Harrison Steel Castings Co.* (1980), Ind.App. 402 N.E.2d 1276, and enlarge the group of persons subject to the tax.

■ Interpreting the Special Fuel Tax Statute, the Department creates a pre-

sumption of taxability, a recordkeeping requirement for determining tax liability, and a means of furnishing conclusive evidence of exemption or nontaxability:

(a) As a general rule, all special fuel acquired by a nonlicensed person is presumed to be acquired for the operation of a motor vehicle.

(b) Every licensed and nonlicensed person who has a special fuel storage facility and acquires special fuel *must keep adequate books and records so that the administrator may determine the amount of the person's special fuel tax liability.*

(c) A licensed special fuel dealer is not required to produce further evidence of exemption or nontaxability if the purchaser provides an exemption certificate which certifies, in form prescribed by the administrator, that the acquisition of special fuel is exempt from the tax.

45 I.A.C. 10–3–10 (emphasis added).

Additionally, the Department regulates special fuel sales by licensed special fuel dealers through metered pumps:

(a) As a general rule, all special fuel sold by a licensed special fuel dealer through a metered pump is presumed to be sold and placed into the supply tank of a motor vehicle, and therefore subject to tax.

(b) A licensed special fuel dealer selling special fuel through a metered pump to persons claiming exemption from special fuel tax, or claiming that the transaction is nontaxable, *should maintain adequate proof of exemption or nontaxability indicating why special fuel tax was not collected.*

(c) A licensed special fuel dealer is not required to produce further evidence of exemption or nontaxability if the purchaser provides an exemption certificate which certifies, in form prescribed by the administrator, that the acquisition of special fuel is exempt from the special fuel tax.

45 I.A.C. 10–3–12 (emphasis added).

"[A]n agency's interpretation of the statutory scheme it administers is entitled to judicial deference," *Johnson County Farm Bureau Cooperative Association v. Indiana Department of State Revenue* (1991), Ind.Tax, 568 N.E.2d 578, 586 (quoting *City of Evansville v. Southern Indiana Gas & Electric Co.* (1975), 167 Ind.App. 472, 496, 339 N.E.2d 562, 578), because a rule issued by an agency pursuant to its statutory authority to implement the statute has the force of law. *Johnson County,* at 586 (citing *Hoosier Energy Rural Elec. Coop., Inc. v. Indiana Dep't of State Revenue* (1988), Ind.Tax, 528 N.E.2d 867, 873). The Department cannot, however, enlarge or vary by its rules and regulations the power conferred on it by the legislature or create a rule out of harmony with the statute. *Hutchison v. Indiana State Bd. of Tax Comm'rs* (1988), Ind.Tax, 520 N.E.2d 1281, 1283 (citing *Blue v. Beach* (1900), 155 Ind. 121, 56 N.E. 89; *Wallace v. Feehan* (1934), 206 Ind. 522, 190 N.E. 438; *Shultz v. State* (1981), Ind.App., 417 N.E.2d 1127, 1136).

C & C Oil asserts that its sales from the "No. 2 Fuel Oil" pump fall outside the language of the statute and are not subject to tax because special fuel is not placed into the fuel supply tanks of motor vehicles. Taxing only special fuel delivered or placed into motor vehicle gas tanks is consistent with the purpose of the special fuel tax to generate funds for highway purposes, traffic safety, and policing costs. *Indiana Dep't of State Revenue v. Indianapolis Pub. Transp. Corp.* (1990), Ind., 550 N.E.2d 1277, 1279; *see also* IC 6–6–2.1–702 and 703. Special fuel used to propel off-road equipment, farm, home heating, construction, and other similar equipment, should not have to pay for the incidents of highway use.

The presumption provided in regulation 45 I.A.C. 10–3–10(a) and in regulation 45 I.A.C. 10–3–12(a), that all acquisitions of special fuel by nonlicensed persons and all special fuel sold by licensed special fuel dealers through metered pumps are taxable transactions, enlarges the legislature's limited authorization to tax only special fuel delivered or placed in motor vehicle gas tanks. IC 6–6–2.1–103(i). As applied to nontaxable transactions, the presump-

tion is therefore an impermissible enlargement of the legislature's mandate.

In effect, the Department characterizes C & C Oil's position as a claim for an exemption from the special fuel tax under IC 6–6–2.1–301. The presumption of taxability is proper when a taxpayer is seeking an exemption, since the transaction is taxable in the first instance and escapes taxation only if the requirements of the exemption are met. Placing the burden of proving nontaxability on this taxpayer, while consistent with the precept that exemption statutes are strictly construed against the taxpayer seeking a benefit, *Caylor–Nickel Clinic, P.C. v. Indiana Department of State Revenue* (1991), 569 N.E.2d 765, 768 (citing *Indianapolis Public Transportation Corp. v. Indiana Department of Revenue* (1987), Ind.Tax, 512 N.E.2d 906, 908, *aff'd*, Ind., 550 N.E.2d 1277 (1990)), assumes the sales of special fuel by C & C Oil are properly within the scope of taxation.

C & C Oil asserts that application of the presumption to a taxpayer who is not seeking an exemption but is denying taxability in the first instance, improperly shifts the burden of proof to the taxpayer in light of the general rule that tax imposing statutes are to be construed in the taxpayer's favor. *Sohio Petroleum*, 170 Ind.App. at 128, 352 N.E.2d at 99 (citing *Gross Income Tax Div. v. L.S. Ayres & Co.* (1954), 233 Ind. 194, 118 N.E.2d 480; *Gross Income Tax Div. v. Nat'l Bank & Trust Co.* (1948), 226 Ind. 293, 79 N.E.2d 651).

Even assuming regulation 45 I.A.C. 10–3–10 and/or regulation 45 I.A.C. 10–3–12 are applicable to transactions which do not involve dispensing special fuel into the fuel tank of a motor vehicle, C & C Oil asserts that it sufficiently rebutted the presumption of taxability. Regulation 45 I.A.C. 10–3–10 and regulation 45 I.A.C. 10–3–12 provide three methods to rebut the presumption of taxability, 1) keeping books and records adequate to determine the amount of special fuel tax liability [1] or maintaining adequate proof of the purchas-

er's exemption or nontaxability to show why no tax was collected,[2] 2) collecting exemption certificates from purchasers,[3] and 3) providing further evidence of exemption or nontaxability.[4] C & C Oil did not collect exemption certificates from purchasers. C & C Oil contends, however, that its books and records, which report the number of gallons dispensed through the "No. 2 Fuel" pump, coupled with its mechanical and procedural safeguards that preclude the occurrence of taxable events were sufficient to rebut the presumption.

Conversely, the Department asserts that C & C Oil was required to maintain books and records, which indicate by invoice or purchaser's affidavit, 1) *who* purchased the fuel *or* 2) how the purchaser intended to *use* the fuel. Accordingly, the Department asserts that some type of customer verification is necessary to rebut the presumption of taxability. The Department further asserts that because these recordkeeping requirements have not been met, C & C Oil's sales from the "No. 2 Fuel Oil" tank are subject to tax.

IC 6–6–2.1–1216 imposes a penalty upon special fuel taxpayers if adequate books and records are not kept:

> A person subject to the tax imposed under section 201 of this chapter who does not keep books and records as required by IC 6–8.1–5 is subject to the penalty imposed under IC 6–8.1–10–4.

IC 6–8.1–5–4(a) states:

> Every person subject to a listed tax [which includes special fuel tax] must keep books and records so that the department can determine the amount, if any, of the person's liability for that tax by reviewing those books and records.

C & C Oil provided records regarding the number of gallons dispensed and the amount of tax collected for each of its metered pumps and thereby maintains that the Department had no difficulty conducting its audit. Accordingly, C & C Oil con-

---

**1.** 45 I.A.C. 10–3–10(b).

**2.** 45 I.A.C. 10–3–12(b).

**3.** 45 I.A.C. 10–3–10(c); 45 I.A.C. 10–3–12(c).

**4.** 45 I.A.C. 10–3–10(c); 45 I.A.C. 10–3–12(c).

tends that "adequate books and records" for special fuel tax purposes means maintaining records sufficient to allow the Department to conduct an audit.[5]  C & C Oil further contends that its mechanical and procedural safeguards are "adequate proof . . . indicating why special fuel tax was not collected." [6]

The plain language of the statute and of the regulation supports C & C Oil's interpretation.  IC 6–8.1–5–4(a) states that adequate books and records are those which allow the Department to determine the taxpayer's liability.  Regulation 45 I.A.C. 10–3–10(b) states that adequate books and records are those which allow the Department to determine the amount of the taxpayer's special fuel tax liability.  Regulation 45 I.A.C. 10–3–12(b) states that adequate proof of exemption or nontaxability is an indication why special fuel tax was not collected.  C & C Oil met each of these standards.  If the Department wanted to require special fuel dealers to record customer names and intended uses for the special fuel sold as proof of nontaxability, it has the authority to promulgate such a rule.  IC 6–8.1–3–3(a).  As written, however, the standards are clear, and there is no mention of recording customer names and fuel uses.

The lone case interpreting IC 6–8.1–5–4(a), *Keller Oil Co. v. Indiana Department of Revenue* (1987), Ind.Tax, 512 N.E.2d 501, stated that bare assertions and a dearth of inventory records are inadequate to show if and how much special fuel was sold for non-highway use.  *Id.* at 503.  C & C Oil, however, has provided the Department with records of the type missing in *Keller.*

Finally, the purpose of the adequate books and records requirement is to ensure that the special fuel which is actually used for on-highway purposes is taxed.  C & C Oil has set up mechanical and procedural safeguards that are more efficient at guaranteeing this than the evidence the Department says it would accept.  Certainly it is easier to falsify a writing indicating the intended use of special fuel than it would be to surreptitiously place special fuel in a motor vehicle's gas tank under the watchful eye, even if only intermittently watchful, of trained and propinquous employees.

The court finds, in the absence of a genuine issue of material fact, C & C Oil is entitled as a matter of law to summary judgment on the special fuel tax assessment issue.  Accordingly, the court now GRANTS C & C Oil's motion for summary judgment.

---

5.  45 I.A.C. 10–3–10(b).

6.  45 I.A.C. 10–3–12(b).