SHOUP BUSES, INC., Tri–State Coach Lines, Inc., and United Limo, Inc., Petitioners,

v.

INDIANA DEPARTMENT OF STATE REVENUE, Respondent.

Nos. 45T10–9111–TA–00061, 45T10–9111–TA–00057, 45T10–9201–TA–00003.[1]

Tax Court of Indiana.

May 25, 1994.

---

1. Each of the petitioners has retained the same counsel and their appeals present the same issue. Furthermore, during the years in issue, Shoup Buses, Inc., and Tri–State Coach Lines, Inc., were sister corporations. Accordingly, these cases have been consolidated for the purpose of trial. *See Russell v. Johnson* (1943), 220 Ind. 649, 659, 46 N.E.2d 219, 223 (quoting *Lumiansky v. Tessier* (1912), 213 Mass. 182, 188–89, 99 N.E. 1051, 1053–54).

Morris A. Sunkel, Hoeppner, Wagner & Evans, Valparaiso, for petitioners.

Pamela Carter, Atty. Gen. of Indiana, Thomas K. Caldwell, Deputy Atty. Gen., Indianapolis, for respondent.

FISHER, Judge.

Shoup Buses, Inc., Tri–State Coach Lines, Inc., and United Limo, Inc. (collectively referred to as the Taxpayers) appeal the Indiana Department of State Revenue's (the Department) final determinations denying their claims for refund of Indiana Special Fuel Tax [2] for the years 1986, 1987, 1988, and 1989.

### ISSUE

The court phrases the issue in two parts:

A. Whether out-of-state contiguous counties are included within the meaning of service area in IND.CODE 6–6–2.1–301(a)(6); and

B. Whether travel outside a service area renders a common carrier ineligible for the IC 6–6–2.1–301(a)(6) special fuel tax exemption entirely, both for fuel consumed within the service area and for fuel consumed outside the service area.[3]

### FACTS AND PROCEDURAL POSTURE

The undisputed facts reveal that the Taxpayers are common carriers that operate vehicles powered by diesel fuel. Diesel fuel is designated as a special fuel and is therefore subject to the Indiana Special Fuel Tax, IC 6–6–2.1 (repealed, now IC 6–6–2.5). Al-

though the issue is the same for each individual petitioner, the facts in each instance are different. As a result, it is necessary to distinguish the relevant facts for each individual petitioner.

Shoup Buses, Inc. (Shoup) provides charter services, transporting its passengers anywhere they desire to go. It operates from two base counties: Lake County, Indiana, and Elkhart County, Indiana. Shoup filed claims for refund of Indiana Special Fuel Tax paid in 1987, 1988, and 1989.

Tri–State Coach Lines, Inc. (Tri–State) provides an intercity bus service from its base in Lake County, Indiana. More specifically, it provides two separate route services. On the first route, a van transports passengers from Portage, Indiana (Porter County) to Valparaiso, Indiana (Porter County) and then to Gary, Indiana (Lake County).[4] From Gary, Indiana, the van travels to Hammond, Indiana (Lake County) before it arrives at its final destination of Midway Airport in Chicago, Illinois (Cook County). The second bus route originates in Merrillville, Indiana (Lake County) and travels to Gary, Indiana (Lake County).[5] The bus then makes stops in Hammond, Indiana (Lake County), Harvey, Illinois (Cook County), and Crestwood, Illinois (Cook County), before it arrives at its final destination of O'Hare International Airport (Cook County). On both routes, passengers are permitted to embark and disembark at any stop. Tri–State filed claims for refund of Indiana Special Fuel Tax paid in 1986, 1987, 1988, and 1989.

United Limo, Inc. (United Limo) provides both charter and intercity route services from its base in St. Joseph County, Indiana. The majority of United Limo's passengers are transported over its regular intercity route: Elkhart, Indiana (Elkhart County);

---

**2.** Repealed, P.L. 1993–277, § 56. Now, IND. CODE 6–6–2.5.

**3.** Both Tri–State Coach Lines, Inc., and United Limo, Inc., in their original petitions filed with the court on November 8, 1991, and January 17, 1992, respectively, raised the issue that the Department erroneously disallowed the proportional use exemption authorized under IC 6–6–2.1–301(a)(8) (repealed, now IC 6–6–2.5–30(a)(7)). The issue was only briefly argued by both parties and has subsequently been abandoned. Accord-

ingly, the court will not address that issue in this opinion.

**4.** In Gary, the passengers who wish to go to O'Hare International Airport (Cook County, Illinois) get off the van and board a Tri–State bus.

**5.** In Gary, the passengers who desire to go to Midway Airport (Cook County, Illinois) disembark and get on the Tri–State van described in note 4, *supra.*

South Bend, Indiana (St. Joseph County); LaPorte, Indiana (LaPorte County); Michigan City, Indiana (LaPorte County); Portage, Indiana (Porter County); Highland, Indiana (Lake County); Hammond, Indiana (Lake County); and O'Hare International and Midway Airports (Cook County, Illinois). United Limo's passengers are permitted to embark or disembark at any point. United Limo filed claims for refund of Indiana Special Fuel Tax paid in 1986, 1987, 1988, and 1989.

On October 21, 1991, The Department issued a letter of finding to each petitioner. In all three letters, the Department determined that each of the petitioners' travel activities did not fall within the scope of IC 6–6–2.1–301(a)(6). Consequently, it denied each of the petitioner's claims for refund. The Taxpayers now appeal. Additional facts will be supplied as necessary.

### DISCUSSION AND DECISION

"The court reviews appeals from the Department *de novo*." *Kenny Kent Chevrolet Co. v. Indiana Dep't of State Revenue* (1994), Ind.Tax, 627 N.E.2d 890, 891 (citing *Maurer v. Indiana Dep't of State Revenue* (1993), Ind.Tax, 607 N.E.2d 985, 986). Consequently, the court is bound by neither the issues nor the evidence presented at the administrative level. *Id.*

The Indiana Special Fuel Tax is imposed pursuant to IND.CODE 6–6–2.1–201[6]:

Except as otherwise provided by this chapter, a license tax of sixteen cents ($0.16) per gallon is imposed on the use of special fuel and on the placing of special fuel into the taxable storage facility of an authorized unlicensed user or an authorized unlicensed special fuel dealer.

IC 6–6–2.1–301(a)(6)[7], however, provides

Special fuel sold to a common carrier of passengers ... and used by the carrier to transport passengers within a service area which is not larger than one (1) county and counties contiguous to that county [is exempt from the special fuel tax].

Although both parties contend the language in IC 6–6–2.1–301(a)(6) is unambiguous, they purport different interpretations as to its meaning. The Taxpayers contend that all counties contiguous to a base county, whether in state or out, are included in the meaning of service area. Furthermore, the Taxpayers assert that all travel within a service area qualifies for the special fuel tax exemption, regardless of whether travel occurs outside a service area as well.

The Department responds, however, that the scope of the exemption statute is limited to contiguous counties within Indiana only. The Department further maintains any travel that occurs outside a service area renders a common carrier ineligible for the special fuel tax exemption entirely, both for fuel consumed within the service area and for fuel consumed outside the service area. To support its argument, the Department cites 45 I.A.C. 10–3–7:

(a) Special fuel sold to or used by a common carrier is exempt provided that the special fuel is placed into the fuel supply tank of a common carrier for the sole purpose of transporting passengers within a service area which is not larger than one county and counties contiguous to that county, *all of which are located in Indiana.*

. . . . .

(d) *To be afforded this exemption, common carriers must embark, transport, and disembark passengers within the service area of the common carrier. Special fuel sold and delivered into the fuel supply tank of a motor vehicle operated by a common carrier for the purpose of transporting persons over routes that are outside the service area of the common carrier is subject to tax.*

(Emphases added). The court must therefore determine the meaning of the language in IC 6–6–2.1–301(a)(6).

A court may construe and interpret a statute only if it is unclear and ambiguous. *F.A. Wilhelm Const. Co. v. Indiana Dep't of State Revenue* (1992), Ind.Tax, 586 N.E.2d

---

6. Repealed, now IC 6–6–2.5–28.

7. Repealed, now IC 6–6–2.5–30(a)(6).

953, 955 (citing *C & C Oil v. Indiana Dep't of State Revenue* (1991), Ind.Tax, 570 N.E.2d 1376, 1380). Although a simple disagreement between parties does not necessarily indicate ambiguity, opposing interpretations are persuasive in suggesting that an ambiguity exists. *Indiana Dep't of State Revenue v. RCA Corp.* (1974), 160 Ind.App. 55, 59, 310 N.E.2d 96, 99. If an exemption statute is ambiguous, the court will strictly construe it against the taxpayer claiming the exemption. *See Greensburg Motel Associates, L.P. v. Indiana Dep't of State Revenue* (1994), Ind. Tax, 629 N.E.2d 1302, 1304 (citing *General Motors Corp. v. Indiana Dep't of State Revenue* (1991), Ind.Tax, 578 N.E.2d 399, 404, *aff'd* (1992), Ind., 599 N.E.2d 588). "Nevertheless, a statute must not be construed so narrowly that it does not give effect to legislative intent because the intent of the legislature embodied in a statute constitutes the law." *Id.* (quoting *General Motors Corp.*, 578 N.E.2d at 404).

■ Thus, in the case at bar, the court's foremost goal in construing IC 6–6–2.1–301(a)(6) is to determine the true intent of the legislature. *See Caylor–Nickel Clinic, P.C. v. Indiana Dep't of State Revenue* (1991), Ind.Tax, 569 N.E.2d 765, 768 (citing *Johnson County Farm Bureau Coop. Ass'n v. Indiana Dep't of State Revenue* (1991), Ind.Tax, 568 N.E.2d 578, 580, *aff'd* (1992), Ind., 585 N.E.2d 1336), *aff'd* (1992), Ind., 587 N.E.2d 1311. To accomplish this, the court gives "statutory words and phrases their plain, ordinary, and usual meaning ..." *Knauf Fiber Glass, GmbH v. State Bd. of Tax Comm'rs* (1994), Ind.Tax, 629 N.E.2d 959, 961 (citing *Kenny Kent*, 627 N.E.2d at 893).

### A.

First, the Taxpayers assert that the Department has misinterpreted the meaning of the term "contiguous." "Contiguous," as defined in WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 492 (1981),

means "touching along boundaries for considerable distances" or "next or adjoining...." Accordingly, the Taxpayers maintain that the service areas for Lake County-based Shoup and Tri–State should include not only Porter, Jasper, and Newton Counties in Indiana, but Kankakee, Will, and Cook Counties in Illinois as well. Likewise, the service area for the Shoup branch in Elkhart County should include LaGrange, Noble, Kosciusko, Marshall and St. Joseph Counties in Indiana, and Cass and St. Joseph Counties in Michigan. Finally, the service area for United Limo in St. Joseph County should include Elkhart, Marshall, Starke, and LaPorte Counties in Indiana, and Berrien and Cass Counties in Michigan.[8] The court agrees.

■ IC 6–6–2.1–301(a)(6) makes no mention at all that contiguous counties must be within Indiana only. In fact, that requirement is cited in 45 I.A.C. 10–3–7 only: "a service area [ ] is not larger than one county and counties contiguous to that county, *all of which are located in Indiana.*" The court recognizes that the Department may issue rules and regulations to implement a statute, and that those rules and regulations have the force of law. *C & C Oil Co.*, 570 N.E.2d at 1381 (citing *Johnson County*, 568 N.E.2d at 586, *aff'd* (1992), Ind., 585 N.E.2d 1336). "The Department cannot, however, enlarge or vary by its rules and regulations the power conferred on it by the legislature or create a rule out of harmony with the statute." *Id.* (citing *Hutchison v. Indiana State Bd. of Tax Comm'rs* (1988), Ind.Tax, 520 N.E.2d 1281, 1283). The Department's regulation stating that "contiguous" means counties within Indiana only is inharmonious with the plain and ordinary meaning of the word "contiguous." A service area, as provided for in IC 6–6–2.1–301(a)(6), includes all contiguous counties to the base county, whether they are in Indiana or out-of-state. Therefore, the regulation is invalid to the extent that it exceeds the statute.[9]

---

**8.** *See* Appendix.

**9.** The Taxpayers also assert that to interpret the statute as the Department has, i.e., that the exemption is valid within Indiana only, violates the Commerce Clause of the U.S. Constitution. Be-

cause the court has determined that out-of-state contiguous counties are included in a service area, however, the argument warrants no further discussion. *See Harlan Sprague Dawley, Inc. v. Indiana Dep't of State Revenue* (1992), Ind.Tax, 605 N.E.2d 1222, 1232 (citing *Bayh v. Sonnen-*

## B.

The Taxpayers assert that the Department has misconstrued the statute's meaning in yet another way. The statute states that "[s]pecial fuel sold to a common carrier of passengers ... and used by the carrier to *transport passengers within a service area* ... [is exempt.]" IC 6–6–2.1–301(a)(6) (emphasis added). Accordingly, the Taxpayers contend that the statute requires only that special fuel be used to move passengers across a designated service area, regardless of where they embark or disembark. In other words, the Taxpayers maintain that the fact that their passengers may embark or disembark outside a designated service area should not preclude the Taxpayers from receiving the exemption for all special fuel they consume while transporting passengers in the service area. The Department argues, on the other hand, that the statute's use of the word "within," in conjunction with the word "transport," has a restrictive or limiting effect and therefore "transport ... within" means, as the Department's regulation states, all the Taxpayers' passengers "must embark, [be] transport[ed], and disembark within the service area ..." 45 I.A.C. 10–3–7(a).

■ Because the court has determined that out-of-state contiguous counties may be included in a service area, the issue has been resolved with respect to Shoup and Tri–State in Lake County.[10] The issue remains unresolved, however, for Shoup and United Limo, who are based in Elkhart County and St. Joseph County, respectively, and who travel outside their service areas to get to Chicago. The remaining question can therefore be phrased as whether a common carrier's use of special fuel outside the service area renders it ineligible for the special fuel tax exemption entirely. The court holds that it does not.

The Department again relies on 45 I.A.C. 10–3–7 to assert that the exemption is avail-

*burg* (1991), Ind., 573 N.E.2d 398, 402, *cert. denied*, —— U.S. ——, 112 S.Ct. 1170, 117 L.Ed.2d 415 (1992)).

10. More specifically, because Shoup and Tri–State are based in Lake County, they are still

able for those common carriers who provide local transportation only:

 (a) Special fuel sold to or used by a common carrier is exempt provided [it] *is placed into the ... tank ... for the sole purpose of transporting passengers within a service area ...*

 . . . . .

 (d) ... Special fuel sold and delivered into the fuel supply tank of a motor vehicle operated by a common carrier *for the purpose of transporting persons over routes that are outside the service area ... is subject to tax.*

In the case at bar, the Department maintains that Shoup and United Limo's foremost concern is to transport people to Chicago airports, and "the legislature did not intend to subsidize shuttle transportation to and from major metropolitan [Chicago] airports." *Transcript* at 58–59. As a result, the Department contends that Shoup and United Limo do not use the special fuel for the sole purpose of transporting passengers within their service areas and are not entitled to the exemption at all.

The purpose of the special fuel tax is "to generate funds for highway purposes, traffic safety, and policing costs." *C & C Oil*, 570 N.E.2d at 1381 (citing *Indiana Dep't of State Revenue v. Indianapolis Pub. Transp. Corp.* (1990), Ind., 550 N.E.2d 1277, 1279). "[T]he presumed legislative intent [of the special fuel exemption statute was] to reduce the operating expenses of public transportation providers to enable them to provide a low-fare service to those who do not use or cannot afford private transportation." *Indianapolis Pub. Transp. Corp.*, 550 N.E.2d at 1279. IC 6–6–2.1–301(a)(6) does not require that the Taxpayers exist for the sole purpose of transporting people within their service areas. The "one (1) county plus contiguous counties" standard merely defines a service area; it does not restrict the Taxpay-

within their service areas when they travel to Chicago (Cook County, Illinois). Consequently, they are entitled to the special fuel tax exemption for all special fuel consumed on trips to Cook County, Illinois.

ers from travelling outside the boundaries of their service areas.

Furthermore, by encouraging common carriers like the Taxpayers to provide transportation within a service area, the legislature also intended the residents of the service areas to be the "true" beneficiaries of the exemption statute. In the case at bar, approximately 90 percent of the Taxpayers' passengers are residents of the Taxpayers' base counties or their contiguous counties in Indiana. Trips outside the service areas have been scheduled for the passengers' convenience.

■ The "sole purpose" language in 45 I.A.C. 10–3–7 is an attempt by the Department to add to the exemption statute a requirement that the Taxpayers do nothing more than travel within their respective service areas. To impose such a requirement is beyond the Department's scope of regulatory power. *See Indianapolis Pub. Transp. Corp.*, 550 N.E.2d at 1279. Therefore, despite the fact that Taxpayers may travel to locations outside their designated service ar-

eas, they are not precluded from receiving the special fuel tax exemption on the portion of special fuel they consumed within the service areas.

## *CONCLUSION*

The Department's regulation, 45 I.A.C. 10–3–7, conflicts with IC 6–6–2.1–301(a)(6) in two ways. First, it unduly restricts the meaning of "contiguous counties" to "contiguous counties, all of which are in Indiana." *See* 45 I.A.C. 10–3–7(a). Second, it attempts to impose the additional requirement that the Taxpayers do nothing more than travel within their service areas. *See* 45 I.A.C. 10–3–7(d). By imposing these restrictions, the Department has both contradicted the legislature's intent in enacting IC 6–6–2.1–301(a)(6) and exceeded its regulatory power. *See C & C Oil Co.*, 570 N.E.2d at 1381 (citing *Hutchison*, 520 N.E.2d 1281, 1283). *See also Indianapolis Pub. Transp. Corp.*, 550 N.E.2d at 1279. The Indiana Department of State Revenue's final determinations are REVERSED.

# APPENDIX

MAP COURTESY OF:

INDIANA HISTORICAL BUREAU
140 North Senate Avenue
Indianapolis, Indiana