3551 LAFAYETTE ROAD CORPORA-
TION, d/b/a Brad's Gold Show, Club and
BDH Entertainment Corporation, d/b/a
Brad's Brass Flamingo, Petitioners,

v.

INDIANA DEPARTMENT OF STATE
REVENUE, Respondent.

No. 49T10–9403–TA–00095.

Tax Court of Indiana

Dec. 15, 1994.

Bruce A. Boje, Eric J. Benner, Richards, Boje & Pickering, Noblesville, for petitioners.

Pamela Carter, Atty. Gen., Marilyn S. Meighen, Deputy Atty. Gen., Indianapolis, for respondent.

FISHER, Judge.

3551 Lafayette Road Corporation, d/b/a Brad's Gold Show Club, and BDH Entertainment Corporation, d/b/a as Brad's Brass Flamingo (collectively the Clubs), appeal the final determination of the Indiana Department of State Revenue (the Department), assessing them with sales and use tax liability for the years 1990, 1991, and 1992 (years in issue).

## ISSUE

Whether the Department may assess sales and use tax on tokens used to pay for table dances in the Clubs' VIP Lounges.

## FACTS AND PROCEDURAL POSTURE

The Clubs operate two adult establishments in Indianapolis, Indiana, which provide food, drink, and lounge facilities to the public. The Clubs also provide their patrons with the opportunity to purchase table dances from the Clubs' dancing "staff."

To enter the Clubs, patrons pay a cover charge. Once inside, the patrons may purchase tokens in various denominations to pay for food, drinks, cigarettes, tips, and table

dances. Typically, a 30 minute table dance costs $50, and the patron directly pays the dancer with a token. For all dancing services purchased with a token, the dancer gets 80 percent of the token's value, while the Clubs retain 20 percent.

Table dances may occur anywhere within the Clubs' premises, including their VIP Lounges. The VIP Lounges are rooms in which patrons may eat, drink, watch television, and watch table dances. The doors to the VIP Lounges are always kept open, and access is never denied to any patron who desires to enter. Furthermore, patrons are not required to purchase tokens, nor pay a separate charge or fee, in order to enter the VIP Lounges.

After a 1993 audit, the Department assessed the Clubs with sales and use tax on the sale of the $50 tokens estimated to be exchanged for table dances in both VIP Lounges.[1] The Clubs protested the assessments, and an administrative hearing was held on December 29, 1993. On January 31, 1994, the Department denied the Clubs' protests. The Clubs subsequently appealed to this court, and the matter is now before the court on the parties' cross-motions for summary judgment. Additional facts will be supplied as necessary.

### STANDARD OF REVIEW

A summary judgment motion may be granted only when no genuine issues of material fact are present and a party is entitled to judgment as a matter of law. *Knauf Fiber Glass, GmbH v. State Bd. of Tax Comm'rs* (1994), Ind. Tax, 629 N.E.2d 959, 960. *See also* Ind. Trial Rule 56. "The standard for granting summary judgment is not altered by cross motions for summary judgment." *Safayan v. Indiana Dep't of State Revenue* (1994), Ind. Tax, 631 N.E.2d 25, 26.

" 'The moving party bears the burden of proving first, that no genuine issue of materi-

al fact exists and second, that the moving party is entitled to judgment as a matter of law.' " *Id.* If there are no genuine issues of material fact, "the court's task is to apply the law to the undisputed facts." *Knauf Fiber Glass*, 629 N.E.2d 959, 961.

### DISCUSSION AND ANALYSIS

■ Neither party in this case disputes the facts. The parties do, however, dispute how the law applies to the facts. Because this case calls on the court to construe a statute, it is particularly amenable to resolution by summary judgment. *See id.*

The State Gross Retail and Use Tax Act (the Act), IND. CODE 6–2.5–1 through 6–2.5–10, imposes sales tax "on retail transactions made in Indiana," I.C. 6–2.5–2–1(a), and use tax "on the storage, use, or consumption of tangible personal property in Indiana, if the property was acquired in a retail transaction ..." IND. CODE 6–2.5–3–2(a). "[T]o qualify as a retail transaction, tangible personal property must be acquired for the purpose of resale and transferred to another person for consideration in the ordinary course of the seller's regularly conducted trade or business." *Maurer v. Indiana Dep't of State Revenue* (1993), 607 N.E.2d 985, 987 (citing IND. CODE 6–2.5–4–1(b)). The provision of services, however, generally does not qualify as a retail transaction. I.C. 6–2.5–4–1(e)(1); 45 I.A.C. 2.2–4–2.

■ In the case at bar, the Clubs claim they are entitled to judgment as a matter of law because table dancing is not a retail transaction, but rather a service. Consequently, the Clubs maintain, the tokens used as payment for table dances are not subject to sales and use tax. While the Department concedes that the sale of services falls outside the scope of taxation, it maintains that the legislature carved out an exception to the rule by enacting IND. CODE 6–2.5–4–4, which provides in relevant part:

> used for table dances in the VIP Lounges. *Petitioners' Response to Respondent's Interrogatory No. 3* (filed Oct. 3, 1994). Accordingly, the Department assessed sales and use tax on 50 percent of all the $50 tokens.

---

1. For the years in issue, the Clubs did not keep records on how many $50 tokens were spent on table dances in the VIP Lounges. During the audit, however, one of the Clubs' corporate officers represented to the auditor that he "guessed" that 50 percent of all $50 tokens purchased were

(a) A person is a retail merchant making a retail transaction when the person rents or furnishes rooms, lodgings, or other accommodations, such as booths, display spaces, banquet facilities, and cubicles or spaces used for adult relaxation, massage, modeling, dancing, or other entertainment to another person:

> (1) if those rooms, lodgings, or accommodations are rented or furnished for periods of less than thirty (30) days; and
> (2) if those rooms, lodgings, and accommodations are located in a hotel, motel, inn, tourist camp, tourist cabin, gymnasium, hall, coliseum, or other place, where rooms, lodgings, or accommodations are regularly furnished for consideration.

It is under this statute, the Department maintains, that the Clubs are liable for sales and use tax on tokens sold and used for table dances in the VIP Lounges. The Clubs respond, however, that the exchange of tokens for table dances in the VIP Lounges does not fall within the parameters of I.C. 6–2.5–4–4. Thus, the court must determine the meaning of the language in I.C. 6–2.5–4–4.

"[T]he foremost goal in construing ... [statutes] is to determine the true intent of the legislature." *Shoup Buses, Inc. v. Indiana Dep't of State Revenue* (1994), Ind. Tax, 635 N.E.2d 1165, 1168. "To accomplish this, the court gives 'statutory words and phrases their plain, ordinary, and usual meaning ...'" *Id.* "Moreover, statutes must be construed within the context of the entire act of which they are a part and to give full effect, if possible, to all words and clauses." *Maurer*, 607 N.E.2d at 987.

The Department interprets I.C. 6–2.5–4–4 to mean that a separate fee or charge to enter the VIP Lounges is not necessary, but merely "that the room in which adult entertainment (dancing) occurs be located within a facility that provides accommodations for a fee." *The Department's Response to Petitioners' Motion for Summary Judgment* at 8. Under the Department's rationale, then, the Clubs' cover charge is the trigger for tax

liability on the tokens used for table dances in the VIP Lounges. The Department, however, is mistaken.[2]

██ Under the plain, ordinary, and ususal meaning of the words in I.C. 6–2.5–4–4, a person is a retail merchant when he or she "rents or furnishes ... cubicles or spaces used for adult relaxation, massage, modeling, dancing, or other entertainment ..." As the court has noted in a related context, "the linchpin of taxability ... is 'consideration.'" *Maurer*, 607 N.E.2d at 988, n. 3. Consequently, the words "rents or furnishes" necessarily imply that consideration must be given for use of the actual space in which the adult entertainment occurs. *See Bailey v. State* (1904), 163 Ind. 165, 167, 71 N.E. 655, 656. Moreover, since the tax imposed under I.C. 6–2.5–4–4 is on the consideration received for use of the space, "rents or furnishes" must mean "rents or furnishes for consideration," for if the rental or furnishing of the space were gratuitous, there would be nothing to tax under the statute. The court will not construe a statute to have an absurd result. *See State v. Griffin* (1948), Ind., 79 N.E.2d 537, 540.

By its plain meaning, then, the tax imposed under I.C. 6–2.5–4–4 is on the consideration exchanged for the use of the VIP Lounges to watch the table dances. In this case, while the Clubs' patrons pay a cover charge to enter the Clubs, there is no consideration exchanged to enter the VIP Lounges. With respect to the tokens, they may be used anywhere within the Clubs' premises as payment for food, drinks, cigarettes and table dances, as well as tips for waitresses, bartenders, and table dancers. Furthermore, patrons are in no way obligated to spend any tokens in the VIP Lounges. Indeed, a patron may enter a VIP Lounge with a $50 token in-pocket, sit down, take in the "goings-on," and then leave the VIP Lounge, never having spent the $50 token. As a result, the tokens do not constitute consideration for use of the VIP Lounges and, there-

---

**2.** Indeed, under the Department's rationale, the cover charge could be the necessary consideration under the statute to impose sales and use tax on all tokens spent on table dances within the

entire establishment. Nevertheless, the Department does not contend this to be the case and thus the court does not address it here.

fore, are not subject to sales and use tax under I.C. 6–2.5–4–4.

### *CONCLUSION*

For all the foregoing reasons, this court hereby GRANTS summary judgment to 3551 Lafayette Road Corporation, d/b/a Brad's Gold Show Club, and BDH Entertainment Corporation, d/b/a as Brad's Brass Flamingo, and DENIES summary judgment to the Department.