**SOUTHERN INDIANA GAS AND ELECTRIC COMPANY and Vectren Corporation, successor in interest to Sigcorp, Inc., Petitioners,**

v.

**INDIANA DEPARTMENT OF STATE REVENUE, Respondent.**

No. 49T10–0201–TA–4.

Tax Court of Indiana.

March 9, 2004.

Larry J. Stroble, Jennifer A. Dunfee, Barnes & Thornburg, Indianapolis, IN, Attorneys for Petitioners.

Steve Carter, Attorney General of Indiana, Joel Schiff, Deputy Attorney General, Indianapolis, IN, Attorneys for Respondent.

FISHER, J.

The Petitioners, Southern Indiana Gas and Electric Company (SIGECO) and Vectren Corporation, successor in interest to SIGCORP, Inc. (SIGCORP), appeal the Indiana Department of State Revenue's (Department) final determination assessing them with an additional supplemental net income tax liability for the years ending December 31, 1995 and December 31, 1996 (the years at issue). The issue for the Court to decide is whether, for purposes of calculating Indiana supplemental net income tax liability, the Petitioners' sales of natural gas to out-of-state purchasers should be excluded from the formula for computing the fraction of their business income to be allocated to Indiana.

## FACTS AND PROCEDURAL HISTORY

The parties have stipulated to the following facts. The Petitioners are Indiana corporations with their principal places of business in Evansville, Indiana. SIGCORP is a holding and parent company of several utility and non-utility entities. SIGECO, a wholly-owned subsidiary of SIGCORP, is a public utility engaged in the business of generating, transmitting, distributing, and selling electric power and purchasing, transporting, distributing and selling natural gas.

During the years at issue, the Petitioners purchased natural gas from producers located in Louisiana, Texas, and Illinois. The Petitioners then transported the natural gas to its customers who were located outside Indiana. The natural gas was transported in interstate pipelines, which operated as common carriers under the jurisdiction of the Federal Energy Regulatory Commission. These sales are the subject of this appeal (sales at issue).

The Petitioners took delivery of the natural gas from the producers at a specified point of receipt within the pipeline system (i.e., an interconnect with a pipeline, where two pipelines interconnected, at a pooling point, or at a natural gas gathering system or processing plant). Title, and risk of loss, passed to the Petitioners at that specified point of receipt. The producers bore no responsibility for the natural gas' transportation after it was delivered to the Petitioners at the specified point of receipt.

In turn, the Petitioners transported the natural gas through the pipelines to their customers' "citygates" (i.e., the customers' gas distribution systems) or other specified point of receipt. In certain agreements with their customers, the Petitioners retained ownership of the gas until it reached the point of delivery to the customer. In other agreements, the gas was resold to the customer at the Petitioners' point of receipt so that title and risk of loss first passed to the Petitioners and then passed again to their customer at the point of receipt. In these latter cases, the Petitioners sometimes arranged for transportation of the gas through the pipeline on behalf of the customer, and, in other cases, the customer arranged for its own transportation directly with the pipeline.

The Petitioners prepared and filed all required Indiana income tax returns for the years at issue. In calculating the amount of supplemental net income tax owed, the Petitioners excluded the income it derived from the sales at issue, believing it was not subject to taxation because it was not allocable to Indiana. The only other state in which the Petitioners filed a net income tax return was Kentucky (it owned an electric transmission line in that state).

In March of 1999, the Department completed an audit of the Petitioners in which it found supplemental net income tax deficiencies for both the 1995 and 1996 tax

years.[1] Specifically, the Department took the position that, for purposes of calculating their supplemental net income tax liability, the Petitioners should have included the income it received from the sales at issue in the numerator of their sales factor for apportionment purposes.

On June 11, 1999, the Petitioners filed a protest with the Department. After holding an administrative hearing, the Department denied the Petitioners' protest in a Letter of Findings issued on September 20, 2001.

The Petitioners filed an original tax appeal and petition to enjoin collection of tax with this Court on January 7, 2002. On May 6, 2002, the Department agreed not to collect the tax pending the outcome of the case. On December 5, 2003 the Court heard the parties' oral arguments. Additional facts will be supplied as necessary.

## ANALYSIS & OPINION

### Standard of Review

■ This Court reviews final determinations of the Department *de novo*. IND. CODE ANN. § 6–8.1–5–1(h) (West 2000). Accordingly, it is bound by neither the evidence nor the issues presented at the administrative level. *Snyder v. Indiana Dep't of State Revenue*, 723 N.E.2d 487, 488 (Ind. Tax Ct.2000), *review denied.*

### Discussion

During the years at issue, Indiana imposed a tax on every corporation's net income (i.e., the supplemental net income tax). IND.CODE ANN. § 6–3–8–1 (West 1995) (repealed 2002). The term "net income" meant "adjusted gross income derived from sources within the state of Indiana, as determined in accordance with the provisions of I[ndiana]C[ode § ] 6–3–2–2[.]"[2] IND.CODE ANN. § 6–3–8–2(b) (West 1995) (repealed 2002) (footnote added).

In cases where a corporation derived business income from sources both within and without Indiana, the adjusted gross income derived from sources within the state of Indiana was determined by an apportionment formula. *See* IND.CODE ANN. § 6–3–2–2(b) (West 1995) (amended 1997). Indiana's apportionment formula multiplied the business income derived from sources both within and without Indiana by a fraction, the numerator of which was a property factor plus a payroll factor plus a sales factor, and the denominator of which was three. *Id.* At issue in this case is the sales factor of the apportionment formula:

> The sales factor is a fraction, the numerator of which is the total sales of the taxpayer in this state during the taxable year, and the denominator of which is the total sales of the taxpayer everywhere during the taxable year. . . . Sales of tangible personal property are in this state if:
>
> > (1) the property is delivered or shipped to a purchaser, other than

---

1. From the Department's audit summaries, it appears that for 1996, SIGCORP had a supplemental net income tax deficiency of $7,494.96, and for 1995, SIGECO had a supplemental net income tax deficiency of $13,774.40. (*See* Parties' First Stipulation of Facts, Ex. 1 at 2, Ex. 2 at 7.)

2. Indiana Code § 6–3–2–2 defined "adjusted gross income derived from sources in state" for purposes of calculating a taxpayer's Indiana adjusted gross income tax liability. *See* IND.CODE ANN. § 6–3–2–2 (West 1995) (amended 1997). Thus, the imposition of supplemental net income tax was dependent upon adjusted gross income tax computations. *See* IND.CODE ANN. § 6–3–8–5 (West 1995) (repealed 2002). *See also Indiana Dep't of State Revenue v. Endress & Hauser, Inc.*, 404 N.E.2d 1173, 1175 (Ind.Ct.App.1980).

the United States government, within this state, regardless of the f.o.b. point or other conditions of the sale; or

(2) the property is shipped from an office, a store, a warehouse, a factory, or other place of storage in this state and:

(A) the purchaser is the United States government; or

(B) the taxpayer is not taxable in the state of the purchaser.

A.I.C. § 6–3–2–2(e).

■■■ "When the language of a statute is plain and unambiguous, the court has no power to construe the statute for the purpose of limiting or extending its operation." *C & C Oil Co., Inc. v. Indiana Dep't of State Revenue*, 570 N.E.2d 1376, 1380 (Ind. Tax Ct.1991) (citation omitted). Thus, under the plain terms of Indiana Code § 6–3–2–2(e), the Petitioners' sales at issue were not to be included in the numerator of the sales factor for apportionment purposes because the natural gas was not delivered to a customer in Indiana, nor was it shipped from a location in Indiana.[3]

In its final determination, the Department conceded this point. (*See* Parties' First Stipulation of Facts, Ex. 3 at 6.) Nevertheless, it argues:

The Uniform Division of Income for Tax Purposes Act ("UDITPA") on which Indiana's income statutes are largely

based is premised on the fact that the state of the customer contributes to the earning of the income being taxed. In fact, the apportionment regime adopted by Indiana and specifically Ind[iana] Code § 6–3–2–2(e)—is based on the UDITPA model. The rationale behind the UDITPA model is to "assure that 100 per cent of income, and no more or no less, would be taxed." The Indiana statute was enacted to assure that all of a taxpayer's multi-state income would be taxed in a fair and equitable manner by all States having the jurisdiction to tax such income.[4]

\* \* \* \* \*

Because Ind[iana] Code § 6–3–2–2(e) was silent with regard to income derived from certain types of drop shipment sales, a tax loophole or gap existed and a regulation was required to clarify the statute consistent with proper apportionment[.] If a gap or loophole is allowed, the apportionment provisions would not reach 100% of taxpayer's apportionable business income. Such a gap would result in the apportionment provisions not fairly representing the taxpayer's income derived from sources within the state of Indiana.

(Resp't Br. at 5–6 (internal citations omitted) (footnote added).) Accordingly, the Department asserts that it was within its authority[5] to promulgate Indiana Adminis-

---

3. Indeed, in order for those sales to be included, one of two alternative conditions were required to be met: *either* the natural gas was delivered to a purchaser within the state of Indiana *or* the natural gas was shipped *from Indiana* to the United States government or to another state in which the Petitioners were not taxable. A.I.C. § 6–3–2–2(e). The sales at issue met neither of these conditions.

4. Indiana has not, however, adopted the Uniform Division of Income for Tax Purposes

Act. "Instead [it] has enacted its own allocation and apportionment statute that is based on the Uniform Act's allocation and apportionment provisions, with some modifications." 1160–2nd TAX MGMT. MULTISTATE TAX PORTFOLIOS 1160.16.A. (2003).

5. The Department contends that under Indiana Code § 6–3–2–2(*l*), it has the administrative authority to include in the numerator of the sales factor those "drop-shipment" sales which were not addressed in the statute:

trative Code title 45, rule 3.1–1–53, to "clarify" the statute. That regulation provides in pertinent part:

If a taxpayer whose salesman operated from an office located in Indiana makes a sale to a purchaser in another state in which the taxpayer is not taxable and the property is shipped directly by a third party to the purchaser, the sale will be attributed to the state from which the property is shipped if the taxpayer is taxable in that state. If the taxpayer is not taxable in the state from which the property is shipped, then the property will be deemed to have been shipped from Indiana and the sale is attributed to Indiana. Example: The taxpayer in Indiana sold merchandise to a purchaser in State A. Taxpayer is not taxable in State A. Upon direction of the taxpayer, the merchandise was shipped directly to the purchaser by the manufacturer in State B. If the taxpayer is taxable in State B, the merchandise is deemed to have been shipped from State B to the purchaser in State A. If the taxpayer is not taxable in State B, the merchandise is deemed to have shipped from Indiana by the taxpayer to the purchaser in State A.

IND. ADMIN. CODE tit. 45, r. 3.1–1–53(6) (1996). It is pursuant to this regulation, the Department maintains, that the Petitioners' sales at issue were to be included in the numerator of their sales factor for apportionment purposes.

Indiana Administrative Code title 45, rule 3.1–1–53(6) addresses the rules for apportionment in those situations where the following conditions have been met: a)

If the allocation and apportionment provisions of this article do not fairly represent the taxpayer's income derived from sources within the state of Indiana ... the department may require, in respect to all or any part of the taxpayer's business activity if reasonable:

a taxpayer whose salesman operated from an office located in Indiana; b) makes a sale to a purchaser in another state in which the taxpayer is not taxable; and c) the property is shipped directly by a third party to the purchaser. 45 IAC 3.1–1–53(6). When those conditions have been met, the sale will be attributed to the state from which the property is shipped if the taxpayer is taxable in that state. *Id.* If, however, the taxpayer is not taxable in that state, then the sale will be attributed to Indiana. *Id.*

In the case at bar, the parties agree that the first two conditions of the regulation have been met. They disagree, however, as to the third condition. The Petitioners assert that in order for the third condition to be met, the producer of the natural gas was required to ship it directly to the Petitioners' customers. "Instead, [the Petitioners] took over the ownership of the gas directly from the [producer] and made its own arrangements for shipment of the gas [to its customers]." (Petrs' Br. at 13.)

■ The Department maintains, on the other hand, that the regulation "does not ... define [ ] third party. The term 'third party' is not restricted ... to suppliers and manufacturers of goods sold. Under the regulation, a transportation company could be a third party. Additionally ... it does not matter for whom the third party is shipping. Shipment may be arranged by the seller, the purchaser, the supplier ... or another third party." (Resp't Br. at 8.) In other words, the Department implies that the interstate pipeline (which was acting as the common carrier) is the

\* \* \* \* \*

the employment of any other method to effectuate an equitable allocation and apportionment of the taxpayer's income.
A.I.C. § 6–3–2–2(*l* )(4).

third party in this case. Because the Petitioners' customers received the natural gas directly from a pipeline (the third party), the income derived from that sale must be apportioned to Indiana. The Court, however, disagrees.

■■■■ The rules of statutory construction also apply to the construction of administrative rules and regulations. *LDI Mfg. Co., Inc. v. State Bd. of Tax Comm'rs*, 759 N.E.2d 685, 689 (Ind. Tax Ct.2001). Consequently, the words in a regulation must be given their plain, ordinary, and common meaning, unless the administrative agency intended otherwise. *Id.* Non-technical, undefined words in a regulation are to be defined by their ordinary and accepted dictionary meaning. *Id.* The dictionary defines "third party" as "a person other than the principals." WEBSTER'S THIRD NEW INT'L DICTIONARY 2378 (1981). While this definition alone is not particularly instructive, it must be read within the scope of the regulation's intended context: that of a "drop shipment." "Drop shipment" is defined as "a shipment of goods made by a manufacturer directly to a retailer and not by the wholesaler who made the sale." *Id.* at 694. *See also* BLACK'S LAW DICTIONARY 513 (7th ed.1999) (stating that a drop shipment is "[a] manufacturer's shipment of goods directly to the consumer rather than initially to a wholesaler"). Accordingly, it is clear that the third party, in the context of a drop shipment, is the manufacturer of the product for sale. Thus, the regulation at issue in this case would only apply if the producers

of the natural gas (the third party) were shipping the natural gas to the Petitioners' customers directly. 45 IAC 3.1–1–53(6). Instead, the Petitioners were shipping the natural gas to their customers.

The Department's argument must fail for a second reason. A "shipper" is "[o]ne who ships goods to another[; *o]ne who tenders goods to a carrier for transportation*." BLACK'S LAW DICTIONARY 513 (emphasis added). In the case at bar, it is clear that the "shipper" and the "common carrier" are two different entities. Indeed, the interstate pipelines merely act as carriers of the natural gas—they do not ship it.

This Court cannot say that the Petitioners' sales at issue meet the requirements of Indiana Administrative Code title 45, rule 3.1–1–53(6). As such, Petitioners' sales at issue are not allocable to Indiana, and are therefore not required to be included in the numerator of the formula for computing the Petitioners' supplemental net income tax liability.

### Conclusion

■■■■ For the foregoing reasons, the Department's final determination is REVERSED.[6]

---

**6.** The Petitioners raised one other argument: if this Court were to determine that the sales at issue were to be included in the numerator of the formula, then it must determine whether Indiana Administrative Code title 45, rule 3.1–1–53(6) is invalid because it exceeds the scope of its enabling statute as well as violates the Commerce Clause of the United States Constitution. Given the Court's decision that the subject sales are not required to be includ-

ed in the formula, those questions are now moot. *See Bremen Pub. Schools v. Varab*, 496 N.E.2d 125, 127 (Ind.Ct.App.1986) (stating that issues become moot when they are no longer live or when the parties lack a legally cognizable interest in the outcome of their resolution); *Ind. Wholesale Wine & Liquor Co., Inc. v. State of Indiana ex rel. Ind. Alcoholic Beverage Comm'n*, 695 N.E.2d 99, 108 (Ind.1998) (stating if a case can be decided on

either of two grounds, one involving a constitutional question, and the other a question of statutory (or regulatory) construction, court will decide only the latter).