**MILLER BREWING COMPANY,**
**Petitioner,**

v.

**INDIANA DEPARTMENT OF STATE**
**REVENUE, Respondent.**

**No. 49T10–0110–TA–82.**

Tax Court of Indiana.

July 27, 2005.

Stephen H. Paul, Brent A. Auberry, Baker & Daniels, Indianapolis, Steven R. Duback, Quarles & Brady, LLP, Milwaukee, WI, for Petitioner.

Steve Carter, Attorney General of Indiana, Ted J. Holaday, Deputy Attorney General, Indianapolis, for Respondent.

FISHER, J.

Miller Brewing Company (Miller) appeals the final determination of the Indiana Department of State Revenue (Department), denying its claims for refund of Indiana adjusted gross income tax and supplemental net income tax (collectively, adjusted gross income tax) paid during the 1994–1996 tax years (years at issue).[1] The matter is currently before the

---

1. Because the imposition of supplemental net income tax was dependent upon adjusted gross income tax computations, the Court's reference to the adjusted gross income tax, in this order, is also considered a reference to the supplemental net income tax. *See* IND. CODE ANN. § 6–3–8–5 (West 1995) (repealed

2002). *See also Indiana Dep't of State Revenue v. Endress & Hauser, Inc.,* 404 N.E.2d 1173, 1175 (Ind.Ct.App.1980).

The Court also notes that while Miller has challenged the Department's imposition of adjusted gross income tax for the 1997 tax year, the Department has not yet issued a final

Court on Miller's motion for summary judgment. The issue for the Court to decide is whether Miller's sales of products, which were transported by common carriers to its Indiana customers, were made in Indiana and therefore subject to Indiana adjusted gross income tax liability. For the following reasons, the Court now GRANTS Miller's motion for summary judgment.

## FACTS AND PROCEDURAL HISTORY

The facts in this case are undisputed. Miller is a Wisconsin corporation with its headquarters located in Milwaukee. During the years at issue, Miller sold its products to customers in various states, including Indiana. More specifically, Miller's customers submitted purchase orders to the Milwaukee headquarters, after which products were produced and prepared for pick up at one of Miller's breweries outside of Indiana.

Typically, Miller's customers had three options by which to transfer their products from Miller's breweries to the proper destination: (1) they could pick up the products themselves using their own trucks; (2) they could arrange for a third-party common carrier to pick up the products and transport them; or (3) Miller could arrange for a common carrier to transport the products and the customers would reimburse Miller for the related charges. Regardless, the customers decided how to transport the goods as possession and title of the products transferred to them at the breweries.

As a result of income derived from sales to Indiana customers, Miller filed Indiana corporate income tax returns for the years at issue. In calculating its tax liability, Miller included *all* sales to Indiana customers, regardless of how the products were transported to Indiana. Subsequently, Miller filed amended corporate income tax returns in which it requested a refund of $1,543,207 (plus statutory interest), for taxes paid on income from sales where its customers either picked up the products with their own trucks or arranged for a common carrier. The Department subsequently granted a refund of $874,771.04 (plus statutory interest) of taxes paid on those sales where customers picked up the products using their own trucks; the Department denied the remainder of the requested refund (i.e., $668,435.96), attributable to taxes paid on those sales where a common carrier transported the products.[2]

Miller initiated an original tax appeal on October 5, 2001, alleging that the Department erred in taxing those sales where common carriers transported the products. On June 28, 2002, Miller filed a motion for summary judgment, and withdrew its claims with respect to those sales where *Miller* arranged for a common carrier. Therefore, Miller's motion for summary judgment challenges only those sales where *customers* arranged for a common carrier (sales at issue). The Court held a hearing on the motion on March 25, 2003. Additional facts will be supplied as necessary.

## ANALYSIS AND OPINION

### Standard of Review

■ This Court hears appeals from denials of refunds by the Department *de novo* and therefore is not bound by the

---

determination on that challenge because it is awaiting the outcome of this appeal. (Pet'r Br. at 5.) Therefore, the Court will not address the 1997 claim.

**2.** Miller's requested refund of $13,391 for the 1997 tax year was excluded from these figures. (*See* Pet'r Br. at 4–5; *supra*, note 1.)

evidence or the issues presented at the administrative level. IND. CODE ANN. § 6–8.1–9–1(d) (West Supp.2004–2005); *Chrysler Fin. Co. v. Indiana Dep't of State Revenue,* 761 N.E.2d 909, 911 (Ind. Tax Ct.2002), *review denied.* Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C).

## Discussion

■ During the years at issue, Indiana imposed a tax on every corporation's adjusted gross income derived from sources within Indiana. IND. CODE ANN. § 6–3–2–1(a) (West 1995) (amended 2002). In turn, a corporation's adjusted gross income derived from sources within the state of Indiana was determined by an apportionment formula. *See* IND. CODE ANN. § 6–3–2–2(b) (West 1995) (amended 1997). This formula multiplied the corporation's business income derived from sources both within and without Indiana by a fraction, the numerator of which was a property factor plus a payroll factor plus a sales factor, and the denominator of which was three. *Id.* At issue in this case is the sales factor of the apportionment formula:

The sales factor is a fraction, the numerator of which is the total sales of the taxpayer *in this state* during the taxable year, and the denominator of which is the total sales of the taxpayer everywhere during the taxable year.... Sales of tangible personal property are in this state if: [ ] the property is delivered or shipped to a purchaser, other than the United States government, within this state, regardless of the f.o.b. point or other conditions of the sale[.]

A.I.C. § 6–3–2–2(e) (emphasis added).

To provide further guidance as to what constituted an in-state sale of tangible personal property, the Department promulgated a regulation listing seven examples of scenarios where a transaction is considered either an in-state or out-of-state sale. *See* IND. ADMIN. CODE tit. 45, r. 3.1–1–53 (1996). Of those seven, examples (1) and (7) are most relevant to the Court's analysis. Example (1) states:

Property shall be deemed to be delivered or shipped to a purchaser within this state if the recipient is located in this state, even though the property is ordered from outside this state. Example: The taxpayer, with inventory in State A sold $100,000 of its products to a purchaser having branch stores in several states including this state. The order for the purchase was placed by the purchaser's central purchasing department located in State B. $25,000 of the purchase order was shipped directly to the purchaser's branch store in this state. The branch store in this state is the "purchaser within this state" with respect to $25,000 of the taxpayer's sales.

45 IAC 3.1–1–53(1). In comparison, example (7) states that "[s]ales are not 'in this state' if the purchaser picks up the goods at an out-of-state location and brings them back into Indiana in his own conveyance." 45 IAC 3.1–1–53(7).

## Property Shipped into Indiana

The Department argues that because the customers were located in Indiana, the sales are in this state. Example (1) of the regulation seems to provide support for this position by putting emphasis on the recipient of the goods. *See* 45 IAC 3.1–1–53(1). Nevertheless, the transaction in that example concerns the *shipping* of goods into Indiana. To ship is "[t]o send (goods, documents, etc.) from one place to another, esp[ecially] by delivery to a carrier for transportation." BLACK'S LAW DICTIONARY 1411 (8th ed.2004). A shipper is "[o]ne who ships goods *to another*[; o]ne

who contracts with a carrier for the transportation of cargo. As a legal term of art, the shipper may not be the person who owns the cargo, but an agent or independent contractor." *Id.* (emphasis added).

In the case at bar, because Miller did not contract with the carriers for transportation of the products, it was not a shipper. (*See* Pet'r Br. at 3; Resp't Br. at 3.) The customers also were not shippers, because by definition, they did not send the products to another—as the owners of the cargo, they had the products transported to themselves. *See* BLACK'S LAW DICTIONARY 1411 (8th ed.2004).

Thus, the only other party that could be considered a shipper is the common carrier. The definition of a shipper states, however, that a shipper *contracts with the carrier* for transportation of the products. *Id.* In turn, a carrier is "[a]n individual or organization ... that contracts to transport passengers or goods for a fee." *Id.* at 226. Both the definition of a shipper and that of a carrier indicate the existence of a contract for transportation of goods, with two parties to that contract—a shipper and a carrier. Thus, for the common carrier to be a shipper in this case, the carrier would have to contract with himself to transport the products. Such a conclusion would produce an absurd and impractical position. *See Southern Indiana Gas and Elec. Co. v. Indiana Dep't of State Revenue*, 804 N.E.2d 877, 882 (Ind. Tax Ct.2004) (a shipper and a common carrier are two different entities), *review denied.* In any event, the facts do not reveal such an occurrence and therefore, the Court concludes that the property was not "shipped" into Indiana.

### Property Delivered In Indiana

While example (1) places emphasis on the shipment of goods into Indiana, the Department concedes that example (7) focuses on where the purchaser takes delivery of the property. In particular, the Department stated, "[b]y specifically negating the f.o.b. terms and other conditions of sale, neither the statute nor the regulation focus on specifically where the purchaser takes delivery, *unless* the purchaser himself picks up the goods at an out-of-state location and brings them back to Indiana in his own conveyance." (Resp't Br. at 9 (emphasis added).)

Miller argues that delivery took place at the out-of-state breweries because the common carriers were acting as agents for the customers. More specifically, Miller claims that the common carriers stood in the customers' shoes and accepted delivery of the property outside of Indiana and subsequently carried it back to Indiana. Therefore, the goods were brought back to this state "in the customers' own conveyance." *See* 45 IAC 3.1–1–53(7). The Department claims, however, that example (7) does not apply to the sales at issue because the products were not brought back to Indiana by the customer, himself, "in his own conveyance," but rather by a common carrier. The Court disagrees.

The Indiana Supreme Court has interpreted the phrase "in his own conveyance" in *Indiana Department of State Revenue v. Bendix Aviation Corporation*, 237 Ind. 98, 143 N.E.2d 91, (1957). In *Bendix*, the taxpayer argued that a sale was not subject to taxation in Indiana because the purchaser did not pick up and transport items out of Indiana in his own conveyance, but instead used a common carrier. *Id.* at 97–98. The Court disagreed with the taxpayer's distinction between taxable and non-taxable sales, stating that "the [common] carriers who came to the [taxpayer's plant] in Indiana and took delivery of the [products] were agents of the purchasers, and to all practical effects, it is the same as if the purchasers in person

had taken the articles at the plant." *Id.* at 98.

The principles applied in *Bendix* also apply to the case at bar. Similar to the purchaser in *Bendix*, Miller's Indiana customers contracted with, arranged, and paid for the common carriers' services. (*See* Pet'r Br. at 3; Resp't Br. at 3.) *Cf. Bendix*, 143 N.E.2d at 96. Therefore, the carriers were acting as the customers' agents.[3] When the products were loaded onto the carriers' trucks at the breweries, Miller transferred possession, title and risk of loss of the products to the customers, and therefore, had no right or control over the products or the subsequent transportation. (Pet'r Br. at 3; Resp't Br. at 3.) Thus, delivery of the products took place outside of Indiana. Furthermore, when the carriers transported the products to Indiana, it is the same as if the customers brought the products back to Indiana in their own conveyances. *See Bendix*, 143 N.E.2d at 98. Thus, under example (7) of the Department's regulation, the sales at issue were not "in this state." *See* 45 IAC 3.1–1–53(7).

## CONCLUSION

Miller's sales at issue were not made in Indiana as property was neither shipped, nor delivered, to a purchaser in this state. *See* A.I.C. § 6–3–2–2(e). Because the sales at issue should not have been included in the sales factor of Miller's adjusted gross income tax apportionment formula, Miller is entitled to a refund of the corresponding taxes paid on those sales. For the foregoing reasons, the Court now GRANTS Miller's motion for summary judgment.

---

**3.** The Department has also argued that because Miller did not factually establish an agency relationship between its customers and the common carriers, the common carriers could not have acted on behalf of the customers. Nonetheless, the analysis in *Bendix* renders such a discussion unnecessary. *See Indiana Dep't of State Revenue v. Bendix Aviation Corp.*, 237 Ind. 98, 143 N.E.2d 91, 97–98 (1957) (without finding specific elements of an agency relationship, the Court concluded that where purchaser paid and arranged for common carrier to transport goods, the common carrier acted as the purchaser's agent); *see also Michigan Mut. Life Ins. Co. v. Thompson*, 44 Ind.App. 180, 86 N.E. 503, 505 (1908) (explaining that "[w]hether, upon a given state of facts, a person is or is not an agent of another is a question for the court").