MILLER BREWING COMPANY,
Petitioner,

v.

INDIANA DEPARTMENT OF STATE
REVENUE, Respondent.

No. 49T10–0607–TA–69.

Tax Court of Indiana.

Aug. 18, 2011.

See also, 831 N.E.2d 859.

Stephen H. Paul, Jon B. Laramore, Brent A. Auberry, Baker & Daniels LLP, Indianapolis, IN, Attorneys for Petitioner.

Gregory F. Zoeller, Attorney General of Indiana, Andrew W. Swain, Chief Counsel, Tax Section, Jessica E. Reagan, Timothy A. Schultz, Deputy Attorneys General, Indianapolis, IN, Attorneys for Respondent.

## ORDER ON PARTIES' MOTIONS FOR SUMMARY JUDGMENT

FISHER, Senior Judge.

Miller Brewing Company (Miller) appeals the Indiana Department of State Revenue's (Department) denial of its claims for refund of Indiana adjusted gross income tax and supplemental net income tax (collectively, AGIT) paid for the 1997, 1998, and 1999 tax years (the years at issue).[1] The case presents one issue for the Court to decide: whether, for purposes of calculating its Indiana AGIT liability, Miller's sales to Indiana customers are allocated to Indiana if those customers hired common carriers to pick up their merchandise at Miller's Ohio facility.

## FACTS AND PROCEDURAL HISTORY

Miller, headquartered in Milwaukee, Wisconsin, manufactures and sells malt beverage products throughout the country. During the years at issue, Miller sold its products to customers located in Indiana. In those sales transactions: 1) the Indiana customers submitted purchase orders to Miller's Milwaukee headquarters; 2) Miller produced the products and prepared them for pick up at its Trenton, Ohio brewery; and 3) the Indiana customers arranged for and hired third-party common carriers to pick up the products at the brewery (hereinafter, "carrier-pickup sales"). Possession of and title to the products transferred to the Indiana customers at the brewery.

Miller prepared and filed Indiana corporate income tax returns for each of the years at issue. In calculating its Indiana AGIT liabilities, Miller did not allocate the income it received from the carrier-pickup sales to Indiana. After completing an audit of Miller's tax returns, however, the Department issued proposed assessments against Miller on the basis that it should have allocated the carrier-pickup sales income to Indiana. Miller subsequently "paid" the proposed assessments[2] and then filed a claim for refund with the

1. During the years at issue, a taxpayer's Indiana supplemental net income tax liability was contingent upon its adjusted gross income tax liability computations; consequently, the Court's reference to adjusted gross income tax in this order (i.e., AGIT) is also considered a reference to the supplemental net income tax. See IND.CODE § 6–3–8–5 (1997) (repealed 2002). See also Indiana Dep't of State Revenue v. Endress & Hauser, Inc., 404 N.E.2d 1173, 1175 (Ind.Ct.App. 1980).

2. In 2005, this Court issued an opinion regarding Miller's AGIT liability for the 1994–1996 tax years. Miller Brewing Co. v. Ind.

Dep't of State Revenue (Miller I), 831 N.E.2d 859 (Ind. Tax Ct.2005), review denied. In that case, the Court held that, pursuant to the Department's own regulation, sales to customers who arranged for transportation to Indiana by common carrier did not constitute Indiana sales for the purpose of allocation to this state. Id. at 861–63. As a result of its holding, the Court ordered the Department to refund to Miller the taxes it previously paid on the income from such sales. Id. at 863. The Department subsequently applied that refund against the proposed assessments for the years at issue, satisfying them in full.

Department. On June 12, 2006, after conducting an administrative hearing, the Department issued a Letter of Findings (LOF) denying Miller's claim.

Miller initiated this original tax appeal on July 24, 2006. On December 15, 2006, the Department filed a motion for summary judgment; that same day, Miller also filed a motion for summary judgment. On October 27, 2010, this Court held a hearing on those motions. Additional facts will be supplied when necessary.

## STANDARD OF REVIEW

Summary judgment is appropriate only when the designated evidence demonstrates that no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). Cross-motions for summary judgment do not alter this standard. *Horseshoe Hammond, LLC v. Ind. Dep't of State Revenue*, 865 N.E.2d 725, 727 (Ind. Tax Ct.2007), *review denied.*

## DISCUSSION AND ANALYSIS

■ Indiana imposes a tax on the portion of every corporation's adjusted gross income that is "derived from sources within Indiana[.]" IND.CODE § 6–3–2–1(b) (2011). During the years at issue, income was allocated to Indiana on the basis of a three-factor formula, reflecting a corporation's payroll, property, and sales attributed to this state, with the sales factor receiving the greater percentage of weight.[3] *See* IND.CODE § 6–3–2–2(b) (1994) (amended 2006) (footnote added). For purposes of determining whether a corporation's sales should be attributed to Indiana under this formula, Indiana Code § 6–3–2–2(e)(1) states:

> [s]ales of tangible personal property are in this state if[ ] the property is delivered or shipped to a purchaser, other than the United States government, within this state, regardless of the f.o.b. point or other conditions of the sale[.][4]

I.C. § 6–3–2–2(e)(1) (amended 2006) (footnote added).

As stated earlier, the issue in this case is whether Miller should have allocated its income from the carrier-pickup sales to Indiana. Both parties have argued that the resolution of the issue is contingent on the answer to the following question: does the plain language of Indiana Code § 6–3–2–2(e)(1) mandate the application of "the destination rule?"[5] (See, *e.g.*, Resp't Supp'l Br. Mot. Summ. J. at 9; Pet'r Add'l Mem. Supp. Mot. Summ. J. at 8–9 (footnote added).)

■ The Department asserts the answer to that question is "yes." This is so, the Department maintains, because: 1) the legislature adopted statutory language that tracks the language of section 16 of the Uniform Division of Income for Tax Purposes Act ("UDITPA"), which incorporates the destination rule; 2) Indiana re-

---

3. Effective January 1, 2007, however, Indiana began a phased shift from its three-factor approach to a one-factor approach based solely on sales. *See* IND.CODE § 6–3–2–2(b)(2011).

4. "F.O.B." (i.e., free on board) is "[a] mercantile-contract term allocating the rights and duties of the buyer and the seller of goods with respect to delivery, payment, and risk of loss[.]" BLACK'S LAW DICTIONARY 737 (9th ed.2009). Generally, it stands for the proposition that "[t]he seller's delivery is complete (and the risk of loss passes to the buyer) when the goods pass the transporter's rail[; t]he buyer is responsible for all costs of carriage." *Id.*

5. As the Department has explained, the destination rule "provides that income from sales should be apportioned to the purchaser's state regardless of where the sale actually takes place." (Resp't Supp'l Br. Mot. Summ. J. at 9.)

joined the Multistate Tax Commission ("MTC") in 2007 after a thirty year absence; and 3) other states with statutory language similar to Indiana Code § 6–3–2–2(e)(1) have construed their statutes as requiring the destination rule.[6] (See Resp't Supp'l Br. Mot. Summ. J. at 9, 18–21; Resp't Resp. Br. at 2–4, 16–17; Hr'g Tr. at 14–16 (Oct. 27, 2010) (footnote added).)

Miller, however, answers the question with a "hard to tell."[7] More specifically, it asserts that in enacting Indiana Code § 6–3–2–2(e)(1), the legislature used language that can reasonably be construed in two different ways, effecting two different outcomes. Under one construction, Miller explains, the statutory language can be construed to mean that a sale is an Indiana sale if the property's purchaser is domiciled or has a business situs in Indiana, no matter where the merchandise is shipped or delivered; under the other construction, however, the statutory language can be construed to mean that a sale is an Indiana sale if the property is delivered or shipped to this state, whether or not the purchaser

---

**6.** UDITPA was drafted in the mid 1950s in an effort to "promote uniformity in allocation practices among the states that impose tax on or measured by the net income of a corporation." May Dep't Stores Co. v. Ind. Dep't of State Revenue, 749 N.E.2d 651, 656 (Ind. Tax Ct.2001) (internal quotation marks and citation omitted). Section 16(a) of UDITPA states "[s]ales of tangible personal property are in this state if[] the property is delivered or shipped to a purchaser, other than the United States government, within this state regardless of the f.o.b. point or other conditions of the sale[.]" (Cf. Resp't Des'g Evid. Ex. I at 4–5 with IND.CODE § 6–3–2–2(e)(1) (1994) (amended 2006).) The Department states that UDITPA's goal for uniform tax treatment "accords with the General Assembly's intent that Indiana apportionment factors be applied harmoniously with those of other states" because

> [h]istory shows that Indiana has spent more than a half-century actively contributing to the development of a multistate, uniform apportionment formula. Indiana was a member of the Council of State Governments when UDITPA was being drafted and debated. Indiana chose to base its apportionment formula on UDITPA. [In a regulation, the Department has] declared that [Indiana's] apportionment formula provisions "generally follow the Uniform Division of Income For Tax Purposes Act."

(Resp't Supp'l Br. Mot. Summ. J. at 12–13.) In turn, the MTC is the administrative agency of the Multistate Tax Compact, which was developed in 1967 to promote uniformity in the taxation of multistate businesses. May Dep't Stores, 749 N.E.2d at 656 n. 7 (internal quotation marks and citations omitted). "The Commission is authorized by the Compact to adopt uniform regulations relating to Article IV of the Compact, which embodies UDITPA." Id. (citation omitted). The Department explains that "[w]ith the assistance of ... the MTC, [it] has interpreted the language in Ind[iana] Code § 6–3–2–2(e) as incorporating what is known as the Destination Rule." (Resp't Resp. Br. at 17.)

**7.** When Miller first filed its motion for summary judgment in this case, it argued that given this Court's holding in Miller I, see supra note 2, the Department was barred from denying its refund for the carrier pickup sales for the years at issue. (See Pet'r Mem. Supp. Mot. Summ. J. at 1–2.) The Department responded, however, that in denying Miller's refund for the years at issue, it has relied on an entirely new and different theory than it did when litigating Miller I: that is, whether Indiana Code § 6–3–2–2(e)(1) mandates the use of the destination rule, not whether or how its regulation applies. (See, e.g., Resp't Supp'l Br. Mot. Summ. J. at 21 (stating that Miller I "was limited to interpreting ... [the] Department['s] regulation, but no determination was made as how to interpret the statute upon which the regulation [i]s based").) Ultimately, both this Court and the Indiana Supreme Court determined that the Department was not precluded from advancing its new legal theory in the present case. See Miller Brewing Co. v. Ind. Dep't of State Revenue, 903 N.E.2d 64, 72 (Ind.2009); Miller Brewing Co. v. Ind. Dep't of State Revenue, No. 49T10–0607–TA–69, slip op., 2007 WL 1667128 (Ind. Tax Ct. June 8, 2007).

has an Indiana domicile or business situs.[8] (See Pet'r Add'l Mem. Supp. Mot. Summ. J. at 11–12 (footnote added).) Miller argues that instead of looking to UDITPA, the MTC, or other states to determine the proper construction of *Indiana's* statute, the Department's own regulation interpreting how the legislature intended the statute to apply, should control: "[s]ales are not 'in this state' if the purchaser picks up the goods at an out-of-state location and brings them back into Indiana in his own conveyance." (*See* Pet'r Add'l Mem. Supp. Mot. Summ. J. at 8–9, 11–16 (*citing* 45 IND. ADMIN. CODE 3.1–1–53(7) (1997) (see http://www.in.gov/legislative/iac/)).)

■■■ This Court will construe and interpret a statute only if is unclear and ambiguous. *Shoup Buses, Inc. v. Ind. Dep't of State Revenue*, 635 N.E.2d 1165, 1167 (Ind. Tax Ct.1994). When a statute is susceptible to more than one interpretation, it is ambiguous. *Amoco Prod. Co. v.*

*Laird*, 622 N.E.2d 912, 915 (Ind.1993). To resolve the ambiguity (and therefore determine the legislature's intent in enacting the statutory provision), "it is appropriate for the court to look to a clarifying regulation or one indicating the method of [the statute's] application[.]" *Johnson Cnty. Farm Bureau Co-op. Ass'n v. Ind. Dep't of State Revenue*, 568 N.E.2d 578, 580, 585–86 (Ind. Tax Ct.1991) (internal quotation marks and citation omitted), *aff'd by* 585 N.E.2d 1336 (Ind.1992). Indeed, a regulation (i.e., the interpretation of a statute by an administrative agency charged with enforcing the statute) has the force of law unless it is clearly inconsistent with the statute itself.[9] *Id.* at 586; *Pierce v. State Dep't of Corr.*, 885 N.E.2d 77, 89 (Ind.Ct. App.2008) (footnote added).

■■■ In this case, the Department has not argued that 45 I.A.C. 3.1–1–53(7) is inconsistent with Indiana Code § 6–3–2–2(e)(1).[10] Accordingly, in determining how

8. In other words, Miller explains that it is unclear from the language of the statute "how the words 'purchaser ... within this state' interact with the words 'delivered or shipped[.]'" (Pet'r Add'l Mem. Supp. Mot. Summ. J. at 11.)

9. Thus, if a court determines that an agency's interpretation of a statute through its regulation is reasonable, it should terminate its analysis and not address the reasonableness of any other proposed interpretation. *See Pierce v. State Dep't of Corr.*, 885 N.E.2d 77, 89 (Ind.Ct.App.2008). In terminating the analysis, a court recognizes "the general policies of acknowledging the expertise of agencies empowered to interpret and enforce statutes and increasing public reliance on agency interpretations." *Id.* (citation and quotation marks omitted).

10. In fact, the Department spends very little time discussing its regulation except to say it simply does not apply. Indeed, it argues that because 45 I.A.C. 3.1–1–53(7) falls under the caption of "Examples[,]" it does not have the force of law. (*See* Resp't Reply Br. at 8–11

(*citing* 45 IND. ADMIN. CODE 15–3–2(g) (2011) (see http://www.in.gov/legislative/iac/) (stating that "examples" are included in the Department's regulations for illustrative purposes only and are not to be considered as an official part of such regulations)).) In the alternative, the Department argues that 45 I.A.C. 3.1–1–53(7) does not apply to the facts of this case because the products were not brought back to Indiana by Miller's customers in their "own conveyance," but rather in the conveyance of the common carriers. (*See* Resp't Resp. Br. at 11–13; Resp't Reply Br. at 4 ("[t]he Department does not [believe] that the use of a third party common carrier is an adequate substitution for the taxpayer").)

With respect to the Department's first argument, the Court notes that 45 I.A.C. 3.1–1–53 is composed of three parts: 1) a recitation of the language contained in Indiana Code § 6–3–2–2(e)(1); 2) seven statements, captioned as "Examples," that constitute the Department's interpretation as to how the statute is to be applied, and 3) hypothetical fact patterns that illustrate six of those seven statutory interpretations (each of which is also labeled "Example"). *See* 45 IND. ADMIN. CODE 3.1–1–53

the legislature intended Indiana Code § 6–3–2–2(e)(1) to be applied, the Court finds the Department's interpretation—as embodied in its own regulation—to be more persuasive than UDITPA, Indiana's membership in the MTC, or how other states construe their statutory language. Indeed, while the language of Indiana Code § 6–3–2–2(e)(1) does track the language of UDITPA, *see supra* note 6, Indiana has not adopted UDITPA.[11] *See* I JEROME R. HELLERSTEIN, WALTER HELLERSTEIN & JOHN A. SWAIN, STATE TAXATION ¶ 9.01 (Table 9–1) (3d ed. 1998 & Supp.2011) (listing states that have adopted UDITPA) (footnote added). Moreover, the Court will not impute the MTC's goal of uniform taxation of multistate businesses—via the application of the destination rule—to the legislature's intent in enacting Indiana Code § 6–3–2–2(e)(1), as the Department cannot "explain away" the fact that it promulgated 45 I.A.C. 3.1–1–53(7) in 1979, two years *after* Indiana left the MTC. *See* 45 I.A.C. 3.1–1–53. *See also Miller Brewing Co. v. Ind. Dep't of State Revenue*, 903 N.E.2d 64, 72 (Ind.2009) (*citing* 1977 Ind. Acts 467, P.L.

90–1977; 2007 Ind. Acts 2191, P.L. 145–2007 § 17). In any event, as the Oregon Tax Court aptly explained, the MTC's "aspirational goals" for uniformity in taxation represent matters of policy, not law. *Oracle Corp. v. Or. Dep't of Revenue*, Case No. TC–MD 070762C, 2010 WL 496945, slip op. at 3 (Or. T.C. Feb. 11, 2010). Finally, while other state courts may have found that statutory language similar to that contained in Indiana Code § 6–3–2–2(e)(1) requires the application of the destination rule, the holdings from those jurisdictions are not binding on this Court. In fact, they are not even particularly instructive: none of them analyzed statutory language in conjunction with an interpretative regulation or rule, similar to 45 I.A.C. 3.1–1–53(7), by the administrative entity charged with enforcing the actual statute. (*Cf.* Resp't Supp'l Br. Mot. Summ. J. at 20 n. 78 *with* Resp't Supp'l Des'g Evid., Vol. II at 626–88.) *See also Jamestown Homes of Mishawaka, Inc. v. St. Joseph Cnty. Assessor*, 909 N.E.2d 1138, 1142 (Ind. Tax Ct.2010) (explaining that while case law from other jurisdictions is not binding on

---

(1997) (see http://www.in.gov/legislative/iac/). To say, as the Department has, that its interpretation as to how the statute applies (i.e., the seven statements) is not binding because it falls under the heading of "Examples" is absurd. The whole point of a regulation is to provide an administrative agency's interpretation of a statute, and that interpretation carries the force of law as long as it is consistent with the statute. *Johnson Cnty. Farm Bureau Co-op. Ass'n v. Ind. Dep't of State Revenue*, 568 N.E.2d 578, 585–86 (Ind. Tax Ct.1991), *aff'd by* 585 N.E.2d 1336 (Ind.1992). Thus, in the context of this regulation, the use of the word "Examples" before the seven Departmental interpretations is a misnomer.

With respect to the Department's second argument, the Court already resolved that issue in *Miller I. See Miller I*, 831 N.E.2d at 862–63. The Department's invitation to revisit that issue is, therefore, declined.

11. Furthermore, the Department included in its briefing an excerpt from the 2009 Multi-

state Corporate Tax Guide which explains that, even among states that have adopted UDITPA,

> [t]he proper application of the ... destination test is unclear in situations where an out-of-state purchaser uses its own trucks or hires a third-party common carrier to take delivery (i.e., possession) of the goods at the seller's loading dock, and then transports the goods back to its place of business in another state. These are known as *dock sales*. In such situations, UDITPA Section 16 can be interpreted as requiring the application of either a *place of delivery rule* or an *ultimate destination rule*.

(Resp't Reply Br., Ex. A at I–649.) *Cf. with* I JEROME R. HELLERSTEIN, WALTER HELLERSTEIN & JOHN A. SWAIN, STATE TAXATION ¶ 9.18[1][a] at 253–54 (3d ed. 1998 & Supp.2011) (reiterating that with respect to dock sales, the language of UDITPA's section 16 can, "[a]s a matter of statutory construction[,]" be interpreted either way).

the Court, it may nonetheless be persuasive when the facts, the law, and the necessary legal analysis coincide), *review denied.*

In an attempt to bolster its argument, the Department contends that if the carrier-pickup sales are not deemed Indiana sales, not only will Miller be excused from complying with Indiana law requiring the consistent apportionment of income between states, but inequity will prevail. More specifically, the Department explains that pursuant to 45 Indiana Administrative Code 3.1–1–42 and –50, a taxpayer's apportionment of sales income between Indiana and other states must be consistent. (*See* Resp't Br. Mot. Summ. J. at 24 (stating that "[a] taxpayer must be consistent with the treatment of its sales 'for purposes of returns filed with other states having apportionment statutes and regulations substantially similar to Indiana's[ and i]f the taxpayer's Indiana returns are not consistent in these respects, the returns should disclose the nature and extent of the inconsistency' " (*citing* 45 IND. ADMIN. CODE 3.1–1–42 and –50 (2011) (see http://www.in.gov/legislative/iac/))).) The Department then goes on to say that because the apportionment statutes of both Ohio (where the carrier-pickup sales at issue took place) and Wisconsin (Miller's home state) are substantially similar to Indiana's in that they apply the destination rule, those states would apportion Miller's carrier-pickup sales to Indiana. (Resp't Resp. Pet'r Mot. Summ. J. at 9 (*citing Dupps Co. v. Lindley,* 62 Ohio St.2d 305, 405 N.E.2d 716 (1980); *Pabst Brewing Co. v. Wis.*

*Dep't of Revenue,* 130 Wis.2d 291, 387 N.W.2d 121 (Wis.App.1986)).) The Department claims that not only did "Miller's Indiana income tax returns fail[ ] to advise the Department that, [in] excluding [from its Indiana income its carrier-pickup] sales, Miller's treatment of those sales was inconsistent with the treatment of the same sales by Wisconsin and Ohio[,]" but Miller has now gained an advantage over its Indiana competitors: "Indiana brewers who make [carrier-pickup] sales to Ohio and Wisconsin customers will be taxed on those sales by Ohio and Wisconsin, while Miller [has] avoid[ed] taxation on similar sales in Indiana." [12] (Resp't Resp. Pet'r Mot. Summ. J. at 9–10 (footnote added).) The Department's contention, however, is without merit.

Given the co-existence of Indiana Code § 6–3–2–2(e)(1) and 45 I.A.C. 3.1–1–53(7), Indiana's apportionment rules are not like those of Ohio and Wisconsin. (*See* Resp't Supp'l Des'g Evid., Vol. II at 641–44, 668–670.) Thus, any "perceived" inconsistency by the Department with respect to how Miller reported its income from the carrier-pickup sales to Indiana as compared to Ohio and Wisconsin is irrelevant. Furthermore, the Department has not presented any evidence to the Court indicating that any Indiana brewer is making carrier-pickup sales to Ohio and Wisconsin. (*See generally* Resp't Des'g Evid.; Resp't Supp'l Des'g Evid., Vols. I–III.) *Accord Miller Brewing Co.,* 903 N.E.2d at 72 (where the Supreme Court previously admonished the Department for failing to

---

12. In other words, the Department explains that if Miller's carrier-pickup sales are not taxed in Indiana, they will not be taxed anywhere. (Resp't Br. Mot. Summ. J. at 22–23.) To that end, the Department claims it "is required by law to level the tax playing field between Miller and Miller's Hoosier competitors so that neither has a tax advantage over the other." (Resp't Br. Mot. Summ. J. at 28.) The Department therefore asserts that it is "entitled" to apportion Miller's income in a way it reasonably believes is fair under Indiana Code § 6–3–2–2(*l*)(4) (2004). (*See* Resp't Supp'l Br. Mot. Summ. J. at 30 n. 121.)

support this same assertion with any evidence).

## CONCLUSION

In determining its Indiana AGIT liability for the years at issue, Miller did nothing more than follow Indiana law: pursuant to Indiana Code § 6–3–2–2(e)(1) and 45 I.A.C. 3.1–1–53(7), its carrier-pickup sales were not Indiana sales and therefore not allocable to Indiana. Accordingly, the Court GRANTS summary judgment in favor of Miller and against the Department.

SO ORDERED.