ATTORNEYS FOR PETITIONER
Gregory F. Zoeller
Attorney General of Indiana

Andrew W. Swain
John D. Snethen
Timothy A. Schultz
Jessica E. Reagan
Deputy Attorneys General
Indianapolis, Indiana

ATTORNEYS FOR RESPONDENT
Stephen H. Paul
Jon Laramore
Brent A. Auberry
Indianapolis, Indiana



**FILED**

Jul 26 2012, 2:44 pm

CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 49S10-1203-TA-136

INDIANA DEPARTMENT OF REVENUE,

*Petitioner,*

v.

MILLER BREWING COMPANY,

*Respondent.*

Appeal from the Indiana Department of Revenue
Letter of Findings, No. 01-0358

On Petition for Review from the Indiana Tax Court, No. 49T10-0607-TA-69
The Honorable Thomas G. Fisher, Judge

**July 26, 2012**

**Massa, Justice.**

This appeal is the latest iteration of a decade-long dispute between the Miller Brewing Company and the Indiana Department of Revenue over Miller's Indiana adjusted gross income tax liability. The Department here appeals the Tax Court's determination that Miller owes no tax on certain sales to Indiana customers. We reverse.

**Facts and Procedural History**

Miller Brewing Company is a Wisconsin corporation engaged in the production and sale of malt beverage products. It is headquartered in Milwaukee and operates breweries in various other states. Under Indiana law, corporations like Miller are liable to Indiana for income tax on the proportion of their total income that was earned from Indiana sales.[1] This case concerns the percentage of Miller's total income that is subject to Indiana income tax in tax years 1997, 1998, and 1999; specifically, whether Miller's income from sales to Indiana distributors should be allocated to Indiana if common carriers transported the products from Miller's out-of-state brewery to the distributors in Indiana.

The sales in question generally proceeded as follows: after an Indiana distributor submitted a product order to Miller headquarters in Milwaukee, Miller arranged for the ordered products to be prepared for transport at one of its breweries. The distributor then determined how to transport the products to Indiana; it could 1) pick up the products from the Ohio brewery and bring them back to Indiana itself (customer pick-up sales), 2) hire a third-party common carrier to pick up the products and deliver them to it in Indiana (customer-arranged carrier pick-up sales), or 3) request that Miller hire a third-party common carrier to pick up the products and deliver them to it in Indiana, later reimbursing Miller for the delivery charge (Miller-arranged carrier pick-up sales).

---

[1] As we noted in <u>Miller Brewing Co. v. Indiana Department of Revenue</u> ("<u>Miller II</u>"), 903 N.E.2d 64, 66 n.1 (Ind. 2009), Indiana assesses an adjusted gross income tax and a supplemental net income tax on income "derived from" our state by corporations engaged in interstate commerce. During the tax years at issue in this case, Indiana law allocated a corporation's income by considering three equally weighted factors: the percentage of the corporation's payroll, property, and sales attributed to Indiana. Ind. Code § 6-3-2-2(b) (1998). On January 1, 2007, Indiana began transitioning from the three-factor approach to an allocation based solely on sales. <u>See</u> Act of Mar. 24, 2006, P.L. 162-2006, § 25, 2006 Ind. Acts 3262–69.

When Miller prepared and filed its Indiana corporate income tax returns for 1994 through 1996, it allocated to Indiana all of the income it received from sales to Indiana distributors, regardless of which transportation method the distributor used. After paying the entire tax, however, Miller requested a refund for tax paid on all pick-up sales. The Department granted Miller's request as to the customer pick-up sales, but denied it as to both types of carrier pick-up sales.

Miller filed an original tax appeal petition, and the Tax Court determined that Miller was entitled to a refund of the taxes it had paid on the carrier pick-up sales because those sales were not "Indiana sales" for the purposes of the allocation statute. Miller Brewing Co. v. Ind. Dep't of Revenue ("Miller I"), 831 N.E.2d 859, 863 (Ind. Tax Ct. 2005). The Tax Court denied the Department's subsequent motion to correct error, Miller I, 836 N.E.2d 498, 501 (Ind. Tax Ct. 2005), and we declined to review the Tax Court's decision. Miller I, 855 N.E.2d 998 (Ind. 2006) (table).

When Miller prepared and filed its Indiana corporate income tax returns for 1997 through 1999, it only reported Miller-arranged carrier pick-up sales, and then only for tax year 1997.[2] In 2001, however, the Department audited Miller's 1997–99 tax returns and issued proposed assessments for gross income tax and supplemental net income tax (collectively, "adjusted gross income tax") in the amount of $806,366.23, based on Miller's income from all carrier pick-up sales to Indiana customers. To satisfy this debt, the Department retained Miller's "overpayments" from 1994–96, which it otherwise would have had to refund to Miller pursuant to the Tax Court's 2005 ruling. Miller initiated an administrative appeal of the proposed

---

[2] Miller later filed an amended return for tax year 1997, in which it requested a refund of $13,391 (plus statutory interest) for taxes paid on Miller-arranged carrier pick-up sales. (App. at 48.)

assessment and requested a refund.  On June 12, 2006, the Department issued a letter of findings denying both requests.

On July 24, 2006, Miller filed an original tax appeal petition in the Indiana Tax Court, arguing that Miller I precluded the Department from assessing Indiana tax on carrier pick-up sales.  Both parties moved for summary judgment, and the Tax Court denied Miller's motion, holding that "while issue preclusion may be appropriate in certain property tax cases, it is generally not applicable in revenue cases." Miller Brewing Co. v. Ind. Dep't of Revenue ("Miller II"), No. 49T10-0607-TA-69, slip op. at 7 (Ind. Tax Ct. June 8, 2007).  We accepted Miller's request for interlocutory review and affirmed the Tax Court, holding "that the Department's new arguments . . . are not precluded by Miller I."  Miller II, 903 N.E.2d at 70.

As to the merits of the case, the Tax Court reversed the Department's proposed assessment and granted Miller's request for a refund.  Miller II, 955 N.E.2d 865, 872 (Ind. Tax Ct. 2011).  It held that Miller's carrier pick-up sales to Indiana customers were not "Indiana sales" as defined by Indiana tax law and thus granted summary judgment in favor of Miller and against the Department.  Id. (citing Ind. Code § 6-3-2-2(e)(1) (2010); 45 Ind. Admin. Code 3.1-1-53 (2008) (Example 7)).[3]

We granted review.  963 N.E.2d 1120 (Ind. 2012) (table); see also Ind. Appellate Rule 63(A).

---

[3] As the Tax Court did, we cite the current version of the relevant statutes in our opinion, as the applicable provisions have not been substantively amended since the tax years at issue.

## Standard of Review

Summary judgment is appropriate when the record shows that no genuine issues of material fact remain for trial and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). We are sensitive to the Tax Court's unique function and specialized expertise, and we review its decisions on matters of Indiana tax law with cautious deference. Ind. Dep't of Revenue v. Belterra Resort Ind., LLC, 935 N.E.2d 174, 176 (Ind. 2010), modified on reh'g, 942 N.E.2d 796 (Ind. 2011). Therefore, we will set aside the Tax Court's decision "only if we are definitely and firmly convinced that an error was made." Id. at 177.

## Indiana Code § 6-3-2-2(e) Is Unambiguous

Our settled procedure of statutory construction begins with a determination as to "'whether the legislature has spoken clearly and unambiguously on the point in question.'" Sloan v. State, 947 N.E.2d 917, 922 (Ind. 2011) (quoting Rheem Mf'g Co. v. Phelps Heating & Air Conditioning, Inc., 746 N.E.2d 941, 947 (Ind. 2001)). If so, our task is relatively simple: we need not "delve into legislative intent" but must give effect to "the plain and ordinary meaning of the language." Id.

According to Indiana Code § 6-3-2-2(e), a sale "of tangible personal property" is deemed to have taken place in Indiana if "the property is delivered or shipped to a purchaser that is within Indiana, other than the United States government." Ind. Code § 6-3-2-2(e). This is true "*[r]egardless of . . . other conditions of the sale*." Id. (emphasis added).

Here, quite clearly, the malt beverage products were taken from Miller's brewery and "delivered or shipped" to purchasers in Indiana. The statute does not differentiate between goods that were "delivered or shipped" by Miller and goods that were "delivered or shipped" by third-party carriers; rather, it states that all goods "delivered or shipped" to an Indiana customer

5

constitute Indiana sales, and that this rule applies "regardless" of the particular arrangements of the sale. Because the statute is unambiguous, we decline parties' invitations to consider extraneous evidence of legislative intent, including—but not limited to—legislative history and administrative interpretations of the statute.

**Example 7 Does Not Have the Force of Law**

Miller argues not only that the statute is ambiguous, but that the ambiguity is clarified by an "example" accompanying a related administrative rule. (Resp.'s Br. at 11–16.) According to that example, "[s]ales are not 'in this state' if the purchaser picks up the goods at an out-of-state location and brings them back into Indiana in his own conveyance." 45 Ind. Admin. Code 3.1-1-53 (Example 7). Miller contends that the term "in his own conveyance" includes not only vehicles owned by the purchaser himself, but also vehicles owned by common carriers hired by either the purchaser or the seller to transport the goods to Indiana. (Resp.'s Br. at 15.)

That interpretation is plainly inconsistent with the language of the example; the ordinary reader would understand "his own conveyance" to mean a conveyance owned by the purchaser, not a conveyance owned by anyone else, such as a third-party common carrier. It is also inconsistent with the way that the Department has used the term in other contexts. The Department has consistently distinguished between a seller's or buyer's "own conveyance" and a conveyance belonging to a common or contract carrier. See, e.g., 28 Ind. Reg. 3748 (July 26, 2005) (stating that there is no tax on furniture delivered outside Indiana "by either the taxpayer's own conveyance or common carrier"); 27 Ind. Reg. 3380 (May 7, 2004) (differentiating between freight charges for delivery "in the seller's own conveyance" and those "made by common carrier"); 25 Ind. Reg. 575 (Nov. 1, 2001) (stating that there is no tax on sales to goods delivered outside of Indiana regardless of "whether shipment is made by the seller in his own conveyance, by his contract carrier or by common carrier"). Thus, Example 7 does not apply to carrier pick-up sales at all.

Even if Miller's reading of Example 7 were correct and applicable, it would make no difference. The Department has unequivocally stated that examples are "included in" rules "for illustrative purposes only," meaning that they are not themselves rules. 45 Ind. Admin. Code 15-3-2(g) (2008). Such illustrations "specifically designated as examples" of how rules apply "are not to be considered as an official part of such rules." Id. Example 7 appears, along with six other paragraphs, after the text of the rule itself and under the separate heading "Examples." 45 Ind. Admin. Code 3.1-1-53. Thus, it is "specifically designated" as an example and not a rule, and it does not have the force of law.[4]

## The Tax Court Applied the Proper Standard of Review

Finally, we acknowledge the Department's contention that the Tax Court applied the wrong standard of review in this case, reviewing the case *de novo* when it should have granted deference to the Department's administrative expertise. (Pet.'s Br. at 1.) The Tax Court did not explicitly identify a standard of review in its opinion. See Miller II, 955 N.E.2d at 867. Nevertheless, we note that where, as here, the taxpayer appeals a proposed assessment and a denied refund, the Tax Court has the authority—indeed, the obligation—to review the Department's ruling *de novo*.[5] Ind. Code §§ 6-8.1-5-1(i) (2010) (mandating *de novo* review for

---

[4] We do note that the Department has the authority to clarify Example 7 if it wishes to do so. See Ind. Code § 6-8.1-3-3(a) (2010) (authorizing the Department to adopt rules). To the extent that such clarification could forestall future litigation on this contentious issue, this Court encourages it.

[5] The Department cites State Bd. of Tax Commissioners v. Jewell Grain Co., Inc., 556 N.E.2d 920, 921 (Ind. 1990), for the proposition that the tax court should have applied deferential review in this case. Jewell Grain, however, was decided in 1990—three years before the legislature changed the standard of review for appeals of proposed assessments to *de novo*. See Act of May 12, 1993, P.L. 71-1993 § 17, 1993 Ind. Acts 3313 (adding the text of subsection (i) to Ind. Code § 6-8.1-5-1). Thus, the standard of review applied in that case is inconsistent with our current statutory scheme and does not apply here.

appeals of proposed assessments), 6-8.1-9-1(d) (2010) (mandating *de novo* review for appeals of denied refund claims).

## Conclusion

The Tax Court determined that Example 7 was an administrative rule with the force of law and that it operated to exempt Miller from liability for Indiana tax on income from sales of goods delivered by common carrier to Indiana customers. We find that this determination was clearly erroneous and hold that Example 7 does not have the force of law. Accordingly, we reverse the decision of the Tax Court.


Dickson, C.J., Sullivan, and David, JJ., concur.
Rucker, J., dissents with separate opinion.

**Justice, Rucker, dissenting.**

The Tax Court determined that Indiana Code section 6-3-2-2(e)(1) is ambiguous. And I agree. Acknowledging Miller's argument in this regard the court had this to say:

> Under one construction, Miller explains, the statutory language can be construed to mean that a sale is an Indiana sale if the property's purchaser is domiciled or has a business situs in Indiana, no matter where the merchandise is shipped or delivered; under the other construction, however, the statutory language can be construed to mean that a sale is an Indiana sale if the property is delivered or shipped to this state whether or not the purchaser has an Indiana domicile or business situs.

Miller Brewing Co. v. Ind. Dep't of State Revenue, 955 N.E.2d 865, 868-69 (Ind. Tax Ct. 2011). To resolve this ambiguity the court looked to the Department's own clarifying regulations. Since 1979 the Department has provided guidance on when a sale of goods is "in this state" or not and has provided useful examples. One of which is Example 7, which provides in relevant part, "Sales are not 'in this state' if the purchaser picks up the goods at an out-of-state location and brings them back into Indiana in his own conveyance." 45 Ind. Admin. Code 3.1-1-53 ex. 7. In granting summary judgment in favor of Miller the Tax Court found persuasive "the Department's interpretation – as embodied in its own regulation . . . ." Miller Brewing Co., 955 N.E.2d at 870.

"When a summary judgment involves a question of law within the particular purview of the Tax Court, cautious deference is appropriate." Ind. Dep't of State Revenue v. Bethlehem Steel Corp., 639 N.E.2d 264, 266 (Ind. 1994). This Court will set aside the Tax Court's determinations of tax law on summary judgment only if it is definitely and firmly convinced that an error was made. Id. I am not convinced an error was made here. Applying our cautious deference standard of review I would affirm the judgment of the Tax Court. Therefore I respectfully dissent.